EVERITT and another *against* CHAPMAN and another.

*Litchfield*,
June,
1827.

Everitt
*v.*
Chapman.

6  347
58  423

*A. B.* and *C.* entered into partnership, in the business of tanning hides, stipulating in the articles, that *A.* should furnish hides for one half of the stock necessary to keep the tannery in operation, and should receive and make market for one half of the leather, and that *B.* and *C.* should furnish the other half of the stock, and receive and make market for the other half of the leather; and that in making purchases each should use his own credit separately. *B.* purchased of *D.*, in another state, a quantity of hides, which *D.*, being ignorant of the partnership, charged to *B.* individually. These hides were received at the tannery, and manufactured into leather, for the joint benefit of the partners. In an action of book debt, brought by *D.*, against *A.*, *B.* and *C.*, as partners, to recover the value of these hides, it was held, 1, that the manner in which the goods were in fact purchased and charged, did not preclude the seller from resorting to the partnership, when discovered; 2. that the stipulated division of the manufactured article, specifically, among the partners, was equivalent to a participation of profit and loss; 3. that the stipulation as to purchases of stock for the use of the partnership, though binding on the partners, as between themselves, could not affect third persons ignorant of any partnership; and consequently, that the defendants were liable as partners.

Where the terms of the agreement and the facts are admitted, whether there was a partnership or not, is a question of *law*, which it is the duty of the court to decide.

This was an action of book debt, brought by the plaintiffs against *Isaac Chapman* and *Russel Mott*, as surviving partners of the defendants and *Henry R. Mott*, deceased.

The cause was tried at *Litchfield*, *August* term, 1826, before *Daggett*, J.

The plaintiffs claimed to recover of the defendants 891 dollars, 11 cents, and the interest, for a quantity of hides, delivered in *September*, 1822. It was agreed, that the hides were delivered in compliance with the letter of *H. R. Mott*, deceased, which was as follows: " *Colebrook*, *September*, 1822.

Messrs. *Thomas Everitt & Son*,

I send you enclosed 75 dollars; and wish you to send me 100 or 150 *Buenos Ayres* hides, or any other which you think are a good, sound, profitable hide. I wish them put on board a vessel bound to *Hartford*, and landed either at *Hartford* or *Wethersfield*. The hides I want on a credit of ninety days; though I am coming down as soon as I hear the sickness is abated in *New York*, and shall then pay a part or all. Please write me soon, whether you send them or not. Yours,

*Henry R. Mott.*"

It was also agreed, that the defendants and *H. R. Mott* were then in partnership, and had been, for several months previous

thereto, in *Colebrook*, in the county of *Litchfield*, under the name of *Chapman & Motts*, for the purpose of manufacturing leather; and that the hides were bought and received by *H. R. Mott*, to be manufactured into leather, by the partners.— The partnership agreement was as follows : "This agreement made by and between *Isaac Chapman*, of *East-Haddam*, in *Middlesex* county, *Henry R. Mott*, and *Russel Mott*, both of *Colebrook*, in *Litchfield* county, who all hereby agree to unite within themselves into a company, for the purpose of transacting business to advantage, at the tannery owned by said *Chapman*, in said town of *Colebrook*, under the firm and by the name of *Chapman & Motts*. Said partners agree with each other to do what is in their power to increase the property of, and strengthen and enrich said firm or company ; and for that purpose, the said *Chapman*, on his part, to turn into said company the use of his capital now lying in said *Colebrook*, consisting of a dwelling-house and barn, and one acre of land, and his tannery, consisting of bark-mill, shop and tan-yard, &c. for the use of said company, for the yearly rent or income of 6 *per cent.* on the cost of said capital, amounting to something more than 3000 dollars, as per account which said *Chapman* has kept of its cost, shall more fully appear ; and also agree to furnish hides for one half of the stock necessary to keep said tannery in operation ; and also to receive and make market for one half of the leather, that shall be made in said establishment. The said *Henry R. Mott* and *Russel Mott* hereby agree, on their part, to pay to the said *Chapman*, yearly, one half of the 6 *per cent.* on the said capital above expressed, to be employed as aforesaid ; and to furnish one half of the hides necessary to keep said tannery in operation ; and also to make a market for one half of the leather that shall be tanned in said tannery ; and also receive and take care of all the bark necessary to tan all said stock ; and also to do all the work necessary to be done in said tannery, in a faithful and workman-like manner, for 4 1-2 cents for each pound of said leather that shall be so tanned by them ; and also agree to bear one half of the expenses of keeping said tannery in good, useful and tenantable repair, during the continuance of said company. All the said parties also agree to use their own credit separately, and not jointly, in purchasing any thing ; and no notes are to be given, only by each individual in his own name. Said company is to be dissolved, at any time, by the consent of the parties. In confirmation of

the above, we have hereunto set our hands, this 12th day of *April*, 1822.

> *Henry R. Mott,*
> *Russel Mott,*
> *Isaac Chapman.*"

The plaintiffs, at the time of the sale and delivery of the hides, being ignorant of any copartnership between the defendants and *H. R. Mott*, charged them to *H. R. Mott* only. The business of manufacturing leather under the articles of copartnership, was conducted by *H. R. Mott ;* and the hides were received, and put into the vats in the tannery, and there manufactured into leather, for the joint benefit of the defendants and him. *Chapman* furnished his proportion of hides, according to the stipulations in the articles of copartnership. The partnership was published at *Colebrook*, by posting it in sundry public places. The plaintiffs resided at *Brooklyn*, in the state of *New-York*, opposite to the city of *New-York*.

On these facts the plaintiffs insisted, that the defendants were liable, as surviving partners of *H. R. Mott* and themselves, for the debt thus contracted. The defendant, *Chapman*, under the plea of *owe nothing*, contended, that he was not liable.

A question was made, in the course of the trial, whether the sum of 75 dollars, mentioned in the letter, was paid towards these hides, or on another account. That question was submitted to the jury as a matter of fact, and with directions to deduct that sum from the price of the hides, or not, as they should find the proof to be.

On the principal point in the case, the judge charged the jury, that upon the facts admitted, the defendant *Chapman* was liable, as a partner, for the value of these hides, to the plaintiffs. The jury returned a verdict for the plaintiffs accordingly ; and the defendants moved for a new trial, on the ground of a misdirection.

*Bacon*, in support of the motion, urged the following considerations. 1. The agreement between *Chapman* and the *Motts* did not shew a legal partnership ; as there was to be no division of profits, but *Chapman* was to furnish one half of the hides and receive one half of the leather, and the *Motts* were to do and receive the same.

2. If a partnership existed, there was a *special* or *limited* one for the purpose of *manufacturing leather* from hides, and did

*Litchfield,*
June,
1827.

Everitt
*v.*
Chapman.

not extend to *purchases.* In furnishing stock, the partners were to act in their individual capacities, and were to use their individual credit. The partnership had no title to any hides purchased for manufacture, until they were brought to the tannery. The case of *Saville* v. *Robertson* & al. 4 *Term Rep.* 720. is in point. There, several persons agreed to fit out a ship and cargo on a joint adventure; but it was also agreed, that one was not to be bound for any goods ordered by another; the plaintiff furnished goods, by the separate order of one; and it was held, that until these goods were put on board, they remained the separate property of the purchaser, and the others were not liable for them.

3. In point of fact, the hides in question were not purchased on the partnership credit, but were purchased on the individual credit of *Henry R. Mott;* and the partnership received them of him, as his individual property. The capacity of one partner to contract on his individual responsibility, will not be questioned.

4. The publication of the articles of copartnership, by posting them in sundry public places in *Colebrook*, was constructive notice to the plaintiffs of the limited nature of the partnership. *Livingston* v. *Roosevelt*, 4 *Johns. Rep.* 251.

5. Whether there was a partnership or not, was a question of *fact*, which ought to have been submitted to the jury.

*W. G. Williams* and *J. W. Huntington,* contra, were stopped by the Court.

DAGGETT, J. It was suggested, by the counsel for the defendants, though not pressed, that it should have been left to the jury to decide, whether the defendant *Chapman*, was a partner. Surely, it was a question of *law*, and therefore, within the province of the court to decide, whether by the articles recited and the facts admitted, a partnership, which subjected the partners to this debt, existed. There being no fact in controversy, it was the undoubted duty of the judge to state to the jury whether the defendants were liable, as partners.

It was further suggested, that the plaintiffs trusted *Henry R. Mott,* and charged the hides to him. Such is the fact, in every case, where the suit is brought against a dormant partner; yet when he is discovered, he is rendered liable. This is familiar law, and hardly requires support from authorities. In *Hoare*

*Litchfield,*
June
1827.

Everitt
*v.*
Chapman.

& al. v. *Dawes, Doug.* 371. Lord *Mansfield* said, " that the law with respect to dormant partners is not disputed, *viz.* that they are liable when discovered." Indeed, it would be most unjust, that a person really in partnership, and participating in the profits, should not be rendered liable for the debts of the partnership, merely because he chose to conceal himself, or because his partner, when buying goods for the use of the partnership, did not disclose his connexion. Such a principle is not to be tolerated.

It was also suggested, that the leather, when manufactured, was to be divided between the copartners, that is, the two *Motts* were to receive and sell one half, and *Chapman* the other. Be it so : The leather was to be divided into moieties in quantity and quality. Such is the clear meaning of the article. Is it not the same, then, as if the whole leather was, by agreement, to be sold, by either of the partners, or by an agent, and the avails divided?

Where, then, is there room for a question in this case ? The counsel for the defendants answer, here is no copartnership in *purchases* for this establishment, because the *Motts*, by the articles, were to purchase one half the hides, and *Chapman* the other half; and neither of these parties were to use the credit of the other. This agreement might bind the parties. And it could not influence the present decision, if it were admitted, that it ought to affect third persons, dealers with either of the partners, if they were cognisant of the fact; but it is no part of the case, that either the public at large, or these plaintiffs in particular, were acquainted with the stipulations in question. On the contrary, it is conceded in the motion for a new trial, that the plaintiffs were ignorant of any copartnership at all; it is therefore to these plaintiffs a case of a dormant partner, dis covered after the debt was contracted. And is it to be endured, that a clause inserted in a private agreement between two or more partners, that one of the partners *only* should be liable for property purchased for the use and benefit of the whole, should bind third persons, ignorant of any partnership? The injustice of such a doctrine is too great to need animadversion.

The case, then, under consideration, presents a partnership between three persons, with an agreement between themselves, substantially, to share in profit and loss, but that in the purchase of one of the materials for the manufacture, *viz.* hides, two of them should, with their own funds or credit, purchase one half,

and the third the other half.    For hides, thus purchased for the tannery, by either, I am satisfied, all the partners are liable.    It would be to depart from the spirit of all the decisions on this subject, to decide otherwise.

In *Grace* v. *Smith,* 2 *W. Bla. Rep.* 1000.    *De Grey,* Ch. J. says: " Every man who has a share in the profits of a trade, ought also to bear his share of the loss.    And if any one takes part of the profit, he takes part of that fund on which the creditor of the trader relies for his payment."    In reference to the present case, the principle may be thus laid down: If *Chapman* takes part of the profits of these hides manufactured, he takes part of the fund on which the plaintiffs relied, when they sold them to *H. R. Mott.*    The case of *Grace* v. *Smith*, is constantly referred to, as a leading authority.    See *Coop* v. *Eyre,* 1 *H. Bl.* 37. *Gouthwaite* v. *Duckworth* & al. 12 *East,* 421.    And many other cases.

The only case cited with confidence, by the counsel for the defendants, is that of *Saville* v. *J. Robertson & J. Hutchinson,* 4 *Term Rep.* 720.    In that case, it was decided, that in an action against the defendants for goods sold and delivered, if it clearly appeared, that no copartnership existed at the time of the contract to sell to *one of them,* any subsequent agreement between them to share in the profits of the goods, would not render them liable as partners in the purchase.

The court compared it to a case where several persons agree to enter into partnership, each to bring in a stipulated sum of money, and each borrowing his proportion of different persons, in which case, the persons advancing the money, could not maintain actions against all the partners for their several proportions lent to each.

So in our courts, it has been decided, that where two agreed to build a vessel, one to furnish the materials and the other to do the work, and then to own it together, the building of the vessel was not a partnership concern.    But Lord *Kenyon,* in giving his opinion in the case of *Saville* v. *Robertson*, above cited, says : " It is clear, that if all these parties had been partners at the time when their goods were furnished, *though that circumstance was not known to the plaintiff*, they would all have been liable for the value of the goods."    And *Buller,* in giving his opinion, says : " It is certainly true, that if one partner order goods himself without disclosing the names of the other partners, and the goods be afterwards delivered to them all, they are

*Litchfield,*
June,
1827.

Everitt
*v.*
Chapman.

all liable." And one of the judges (*Ashhurst*) thought it a case of partnership. This authority, then, is so far from justifying the defence, that it vindicates the claim of the plaintiffs; for these defendants *were in partnership* when the hides were purchased—*they were bought* for the concern—they were delivered into their tannery—they went to their joint benefit, having been purchased by *H. R. Mott,* without disclosing the names of his copartners.

In *Gouthwaite* v. *Duckworth, Brown* and *Powell,* 12 *East* 421. the facts were more like those in this case. That was an action for goods sold and delivered. There was an agreement, in that case, that *Brown* and *Powell* were to purchase goods for an adventure to *Lisbon,* which were to be shipped on board the *Betsey,* and to pay for the same : and the returns of such adventure were to be made to *Duckworth,* and to go in liquidation of his demands on *Brown* and *Powell. Brown* and *Powell* purchased goods of the plaintiff; but *Duckworth* was not known in the purchase, nor did he authorise the purchase on account of the three, who were to share in the profits and loss.— *Duckworth,* in his own name, purchased and paid for goods, sent out at the same time. *Brown* and *Powell* were to share in the profit and loss of these goods. They were all consigned to *Barlow,* who acted as the agent of all the defendants. The whole court of *King's Bench* adjudged this to be a partnership transaction, and held the defendants jointly liable.

I think the court are warranted, from a view of all the cases, and the general principles of law on this subject, to declare the purchase of these hides to be for the defendants and said *H. R. Mott ;* that had a loss been sustained in the hides, it must have been borne by the three, and any profit shared in like manner ; and that the stipulation respecting the individual purchases of hides, cannot affect creditors, who furnished this joint fund ; and therefore, that the charge was correct, the verdict right, and of course, that no new trial ought to be granted.

The other Judges were of the same opinion, except BRAINARD, J. who was absent.

New trial not to be granted.