## Bucknam *against* Barnum and others.

Where *A*, *B* and *C* entered into articles of agreement with each other, to fit out an adventure to *Texas*, for the mutual benefit of all ; *A* and *B* were to furnish all the capital and make the purchases here, in their own names ; *B* and *C* were to go out to *Texas* with the goods ; *C* was to travel about the

Fairfield,
June, 1842.

Bucknam
v.
Barnum.

country there, dispose of the goods and procure remittances; *B* was to receive a certain sum *per* month for his services; *C* was to receive one fifth part of the nett profits of the adventure; and the remaining four fifths were to be divided equally between *A* and *B*; it was held, that *A* and *B* were liable as partners with *C*, especially as between them and third persons, who found them carrying on such joint adventure for their mutual benefit.

Where the defence to an action by the indorsee of a promissory note, against the maker, was, that it was then the property of the original promisee; and to establish this fact, the defendant offered testimony as to the books of such promisee, without producing them, and as to his declarations; it was held, 1. that if any thing could be proved by the books, they should be produced, or some legal reason given for their non-production; but 2. that neither the books nor the declarations of such promisee were admissible, he not being party or privy in interest with the plaintiff, the fact to be proved being in his favour, and he being alive and a competent witness in the cause.

In an action between *A* and *B*, the declarations of *C*, a third person, are not admissible, on the ground of his being a party in interest, until his character as such party in interest, is established, by other proof than the declarations offered.

THIS was an action brought by *Jesse Bucknam*, as indorsee of a promissory note, against *Daniel Barnum* jr., *Alanson Taylor* and *Frederick W. Smith*, as makers, alleged to be partners under the name of *D. Barnum & Co.* The note was made in the city of *New-York*; the partnership name of the defendants was subscribed thereto; it was for the sum of 477 dollars, dated the 23rd of *January*, 1839, and was payable to *A. W. Sanger*, or order, six months after date. The defendant, *Smith*, was defaulted. The other defendants pleaded the general issue; on which the cause was tried, at *Danbury, September* term, 1841, before *Church*, J.

It was admitted, that the note mentioned in the declaration was indorsed by *Sanger*, the payee, to the plaintiff, before it became due.

The defendants insisted, that the note, after such indorsement, and before the commencement of this suit, had been reassigned and transferred, by the plaintiff, to *Sanger*, and had ever since been his property. In support of this claim, the defendants offered in evidence the deposition of *Nestor H. Sanborne*. The plaintiff objected to the admission of certain portions thereof, which are here distinguished by quotation marks, on the ground that the books therein mentioned were not produced, nor any notice given to produce them; and also, on the ground that such evidence was hearsay.

*Fairfield,*
June, 1842.

Bucknam
*v.*
Barnum.

The deposition, after stating that the deponent was the clerk and book-keeper of *A. W. Sanger,* in the city of *New-York,* in the year 1839 ; that he found on his books, the entry of a note, in *Sanger's* favour, signed by *D. Barnum & Co.* for somewhat over 400 dollars, which note was then in *Sanger's* hands ; that this note was sent to *Jesse Bucknam* of *Boston,* [the plaintiff] and charged to him, by deponent ; that it was afterwards returned to *Sanger,* and " credited on his books to said *Bucknam* ;" that it was then sent, by *Sanger,* to *Reuben Booth* Esq. of *Danbury,* for collection ; that " deponent credited said *Bucknam* with said note, by direction of said *Sanger,* and charged said *Booth* with said note, when sent to him as aforesaid. Deponent made out a balance-sheet from said books, monthly, and said note so charged as aforesaid was always included as a part of the debts due the concern, till their dissolution. Said *Sanger,* in looking over the ledger, on seeing the entry of said note, frequently remarked, that " *that* was one of *Pierce's* bad debts." In the forepart of *December,* 1839, deponent took an account of stock in the store. " Shortly after that, *Sanger* told deponent, that he had dissolved partnership with Mr. *Bucknam,* and he, Mr. *Bucknam,* had nothing more to do with the concern : that he, *Sanger,* had taken the whole into his hands. The note above-mentioned was included in said account of stock. *Sanger* also told deponent, then, to be very particular about the keeping of the accounts, as Mr. *Bucknam* had nothing to do with the concern."

The court excluded the evidence objected to.

The defendants, *Barnum* and *Taylor,* also insisted, that *Smith,* who had been defaulted, was not a partner with them, at the time the note was given, and was not jointly liable with them thereon. In support of this claim, they offered in evidence, the original articles of agreement, entered into between the defendants, before the commencement of their business, of which the following is substantially a copy : " Articles of agreement this day entered into between *Daniel Barnum,* jr., *Alanson Taylor* and *Frederick W. Smith,* all of *Danbury, Fairfield* county, and state of *Connecticut.*

" 1. The said *Barnum* and *Taylor* are to furnish all the capital, and purchase, in their own names, or either of them, all articles, which they may see fit and proper, to fit out an

expedition or adventure to *Texas*, for the mutual benefit of all; which adventure is to be got out forthwith.

" 2. The said *Taylor* and *Smith* are to go out to *Texas*, with such goods as shall be ready prior to their departure, and receive all which may be shipped to them, by said *Barnum*, afterwards; and well and faithfully sell and dispose of them, for cash or other articles, which they may consider preferable to remit: all to be done for the mutual benefit of said *Taylor*, *Barnum* and *Smith*.

" 3. As a compensation for such services, the said *Taylor* is to receive from the said company 30 dollars *per* month, and his expenses only, provided the nett profits of said adventure shall not exceed 1000 dollars, at the expiration of six months from the day of sailing from the city of *New-York*. But if the nett profits of said adventure shall exceed the said sum of 1000 dollars, at the expiration of said six months, then said *Taylor* is to receive, in manner aforesaid, 60 dollars *per* month, and his expenses until his return.

" 4. As a compensation to said *Smith*, he is to receive the equal one fifth part of all the nett profits of such adventure, together with his necessary expenses. He is to pay his own passage out, but is to receive the amount so paid again from said company.

" 5. The remaining four fifths of the nett profits of said adventure are to be equally divided between said *Barnum* and *Taylor*.

" 6. The said *Smith* is to travel about the country in *Texas*, for the purpose of selling goods, making customers and collecting articles to remit to *New-York*, such as furs, bearskins, deer-skins &c., and is to continue in *Galveston* or *Houston*, as may be thought proper, in charge of the business, during the summer and autumn of 1839.

" 7. In case the vessels in which the goods for said adventure are transported, should be shipwrecked or lost, the said *Barnum* and *Taylor* are to have the benefits of the insurance thereon exclusively.

" 8. All remittances in cash, are to be made to *Gideon Freeborn* of the city of *New-York*, as soon and as fast as practicable; and all other remittances are to be made to *Daniel Barnum*, jr., to the care of *Samuel G. Starr & Co.* of said city, as promptly as the interests of said adventurers may require.

" In witness whereof, we do hereunto respectively set our hands and seals, at *New-York*, this 20th day of *November*, *A. D.* 1838." [Signed by all the defendants.]

The defendants, *Barnum* and *Taylor*, thereupon prayed the court to charge the jury, that *Smith* did not, by means of said articles of agreement, become a partner with them in the business.

The court charged the jury, that by means of said articles of agreement, *Smith* did become a partner with *Barnum* and *Taylor*. The jury returned a verdict for the plaintiff; and the defendants moved for a new trial for a mis-direction.

*Bissell* and *Taylor*, in support of the motion, contended, 1. That the declarations of *Sanger* were admissible to prove him the party in interest. *Sw. Ev.* 129. 1 *Phil. Ev.* 232. 257. n. 446. 444. 481. (by *Cowen* and *Hill*.)

2. That hearsay evidence is admissible as constituting a part of the transaction which is the subject of enquiry. 1 *Phil. Ev.* 231.

3. That by the articles of agreement, *Smith* was not a partner. *Loomis* v. *Marshall* & al., 12 *Conn. Rep.* 69. 85. *Wilkinson* v. *Frasier*, 4 *Esp.* 182. *Wish* v. *Small*, 1 *Campb.* 231. n.

*Hawley* and *Booth*, contra, contended, 1. That that portion of *Sanborne's* deposition, which was objected to, was properly excluded. In the first place, it was irrelevant; for if the note had been in truth re-assigned to *Sanger*, it would be no defence. *Gage* v. *Kendall*, 15 *Wend.* 640. *Burdick* v. *Green*, 15 *Johns. Rep.* 247. *Lovell* v. *Evertson*, 11 *Johns. Rep.* 52. Secondly, the testimony excluded was mere *hearsay*, and, on that ground, was properly ruled out. *Fitch* v. *Chapman*, 10 *Conn. Rep.* 8. 12. 2 *Phil. Ev.* 663. to 668. (by *Cowen* and *Hill*.)

2. That all the defendants were liable in this action, as partners. 1 *Sw. Dig.* 337. 339. *Collyer*, 2. 15. *Chitt. Cont.* 193. *Everitt* & al. v. *Chapman* & al., 6 *Conn. Rep.* 347. *Gouthwaite* v. *Duckworth* & al., 12 *East* 421. *Dob* & al. v. *Halsey*, 16 *Johns. Rep.* 34.

WILLIAMS, Ch. J. The agreement in question purports to be made, not by *D. Barnum & Co.*, or *Barnum* and *Taylor*,

with *Smith,* but by *Barnum, Taylor* and *Smith* with each other. It was for an adventure, in which they were to be mutually interested. The purchases here were to be made by *Barnum* and *Taylor ;* remittances in *Texas* to be procured by *Smith ;* and each was to have a certain portion of the nett profits of the adventure. That these profits were not equal, can make no difference in the construction of this agreement. *Smith* is defaulted ; but *Barnum* and *Taylor* say he was not a partner, and so judgment cannot go against them. They have a right to make this objection, although it would seem to come from *Smith* more properly ; but the question fairly arises, are these defendants partners, or not ?

A partnership is said to be a voluntary agreement, between two or more persons, for joining together their money, goods, labour and skill, all or either of them, upon an arrangement that the gain or loss should be divided proportionably between them. *Wats.* on *Part. 1.* These defendants have joined their labour, goods, money and skill together, under an agreement that the nett profits shall be divided proportionably among them.

It is said that the loss is not to be borne, though the profits are to be shared, among them. But if there are no profits to divide, there must probably be a loss ; and that loss, though not specially provided for in these articles, must fall upon the several parties to the agreement ; that is, if there is a loss upon the goods, *Barnum* and *Taylor* must sustain it, and *Smith* would lose his time. *They* would lose upon what *they* brought into the concern ; and *he,* upon what *he* brought in. We think, then, that provision is made to divide the loss, as well as the profits.

We have, then, the case of an adventure by three persons, fitted out for their mutual advantage, and each to do and perform certain things, and each to receive a certain share of the nett profits. And were it not said that *Smith's* share was compensation for services, it would be the ordinary case of partnership agreements, where one brings in no money, but devotes his time and skill to the business. And this expression, surely, is not of much weight in the case ; because the very same words are used with respect to *Taylor,* who is confessedly a partner.

But whatever might be the construction as between them-

selves, the question now is as between them and third persons.   These defendants are found carrying on a joint adventure for their mutual benefit ; one contributes his time and labour, and one his money ; one is to purchase here, in his own name ; the other to procure remittances from abroad ; and out of this community of interest, each is to receive a certain proportion of the nett profits.   It is difficult to see in what capacity *Smith* acts, if not as partner.   They do not designate him as servant or agent, but treat with him as with each other ; and he, as well as the others, is to be paid from the common fund on which the creditor relied for his payment.   *Grace* v. *Smith*, 2 *W. Bla.* 998. 1000.   *Waugh* v. *Carver* & al. 2 *H. Bla.* 235.

We think that the case of *Everitt* v. *Chapman*, 6 *Conn. Rep.* 347., and the authorities there cited, fully support the view of this case, taken by the judge at the trial.   And in the more recent case of *Loomis* v. *Marshall*, 12 *Conn. Rep.* 70., the court did not intend to impair the authority of *Everitt* v. *Chapman ;* but on the contrary, they held that a community of profits was a test of partnership, but the partner must share in the profits as principal.   *P.* 77, 8.

Another ground for a new trial is, that the court excluded evidence derived from the books and declarations of *Sanger,* that the note was his property, and not the plaintiff's.   To the former an objection was made, that the books themselves were not produced ; and to the latter, that it was merely *hearsay.*   If any thing could be proved by the books, we think they should have been produced, or some legal reason given for their non-production.

But we know of no principle by which any part of this evidence could be admitted.   The plaintiff seeks to recover upon this note as an indorsee and *bona fide* holder.   To do this, he must prove that it was indorsed to him, and that it is in his possession, or account for its loss.   We must suppose he has done this ; and now the defendants attempt to prove, that he is not owner, but the original promisee is owner ; and to prove this, by the books and declarations of that same promisee,—a man who is not party or privy in interest with this plaintiff—a man who is interested in supporting the claim he makes, and yet not so interested, but that he might be a

*Fairfield,*
June, 1842.

Bucknam
*v.*
Barnum.

*Fairfield,*
*June, 1842.*

Bucknam
*v.*
Barnum.

witness. If this was an action of trover for a horse, could it be contended successfully, that the title of the plaintiff could be affected, by the declarations of a third person that it was his horse, or that he credited it in his books to the plaintiff? It is said, this is the act of the party ; but it is not an act for which this plaintiff is to account. If he has suffered the note or the horse to go into the hands of *Sanger*, that is his act, and he must account for it ; but for the acts or declarations of *Sanger*, he cannot be responsible. We are not aware of any principle, which would authorize the admission of this evidence. The defendants indeed claim, that *Sanger* is the party in interest. What effect that might have, if proved, might be a question ; but the proof of the fact depends upon the admission of this evidence ; and for such a purpose, it could no more be admitted than the declarations of a person claimed to be a partner with another, can be admitted, against that person, to prove partnership.

We are satisfied that no new trial should be granted.

In this opinion the other Judges concurred.

New trial not to be granted.