Johnson, J.
The expressed intention of the parties was that each should buy on his own credit; that the cattle when purchased should be and remain the property of the purchaser,, unless upon delivery at the station for shipment and sale the others should on inspection elect to take an interest in them. If they so elected, the stock became joint property and was shipped and sold on joint account. In short, by the terms of this contract or arrangement, the partnership did not commence until the cattle reached the station and were accepted; until then, there was no community of interest, nor right to share in the profits. If the stock purchased by either and brought to the station was not accepted by the others, the property remained that of the purchaser. He alone was entitled to all the profits, and was liable for all the losses. As Parcels alone was trusted in this sale by TIickle, the question presented is, were Neff and Yalentine by operation of law liable for the debt thus incurred ?
The claim is that the arrangement between Neff, Yalentine and Parcels for the shipment and sale of cattle and hogs was such that the purchase by either was within the scope of the partnership business and on joint account; or at least it was a general partnership for shipping and selling such property, to be purchased by the several partners; and as the business of shipment and sale could not be carried on without each partner making the necessary purchases, the debts incurred by *27 each for that purpose were within the scope of the partnership business. Briefly stated, the claim is that by operation of law there was a partnership liability for this debt, though made on the sole credit of Parcels. The sale was made to Parcels on his sole credit. Hickle had no knowledge of this arrangement between the parties, and trusted Parcels only, to whom he delivered the property. Under the partnership contract for the ' shipment and sale of cattle brought to this station, it remained his unless it was accepted and shipped on joint account. It was not joint property. Partnership rights and liabilities did not attach. As to this lot of cattle the partnership would not commence until Neff and Yalentine elected to adopt the purchase. Parcels was not bound to deliver them for shipment, but might sell elsewhere on his own account. Until accepted there was neither a community of interest in the property nor in the profits, nor any joint liability for losses.
The better test of a partnership which authorizes one to bind the other partners is to apply the principles of agency. If Parcels had authority express or implied to buy on joint account, then when he made this purchase the cattle go instanti belonged to the firm, whether the others so elected or not. There was no such authority expressed, and none can be implied from the fact that the property was to remain individual property unless Neff and Yalentine should elect to take an interest.
This was a continuing arrangement, applicable, at the option of the parties, to all the cattle and hogs brought for shipment to the eastern market. It 'resulted in a series of partnership ventures. The agreement to purchase stock on individual credit, to be afterwards taken into a joint venture at the option of others than the purchaser, no more rendered the latter liable, than does the borrowing of money by one partner to pay up his share of the partnership capital render the partnership liable. In such a case, the partnership is not liable, even though the money is received and used in the partnership business. Norwalk Bank v. Sawyer, 38 Ohio St. 339; Peterson v. Roach, 32 Ohio St. 374; Bevan v. Lewis, 2 Eng. Ch. 377.
The same rule applies to property purchased on individual account, and afterwards turned over to the firm to be used in *28 its business. Harvey v. Child, 28 Ohio St. 339; Saville v. Roberts, 4 Durn. & East, 720; McGar v. Drake, 5 Reporter, 347 (Tenn. Sup. Ct.); Walls v. Fife, 37 Pa. St. 394; Hoare v. Davis, Doug. 371.
Everett v. Chapman, 6 Conn. 347, and Gouldwaite v. Duckworth, 12 East, 420, are each distinguishable from the case at bar. In each case, there was a prior agreement that each should buy property on individual account, and the property so purchased was to become the joint property of'all for the purposes of the venture. It was held, that a purchase made in pursuance of this arrangement became, by operation of law, partnership property, and the firm was, therefore, liable, on the principle that holds dormant partners liable. The act of purchasing property under such an existing contract, which thereby became partnership property, was, as to third persons, the act of all the partners. On the other hand, where, as in the case of Saville v. Roberts or McGarr v. Drake, supra, the partnership w^as not to commence until after the purchase, there was no liability on joint account. The partnership interest did not vest until after the purchase and credit given. The charge of the court fails to note this distinction, and is misleading in its character, In substance, the jury were told that if sudr purchases were necessary in order to carry on the partnership business (a fact that could not be disputed), then this was within the scope of the authority which Parcels had to bind Neff and Yalentine, though there was not, at the time, and might never be, any joint interest in the property.
The court refused to charge the, propositions numbered 1, 2 and 3, which recognize the correct rule, and should have been given in view of the evidence which tended to raise the question.
Again, the charge' given at the request of the defendant in error, is to the effect, that if there was a partnership in the shipment and sale of such stock on joint account, then it is a general partnership for tha purchase, also, and therefore a purchase by each was within the scope of partnership business, though no joint interest attached at the completion of the purchase, and none might ever attach.

Judgment is reversed and cause remanded.