Parker, J.
This, case comes into this court on appeal from the court of common pleas of this county. The petition sets forth, in substance, that about March, 1896, the plaintiff and the defendants William M, Masterman, H. W. Townsend, F, W. Zorn and F. C. Hornung, entered into a contract of partnership under the firm name..of the Ervin Oil Company, for the purpose of owning, operating and developing a certain leasehold of oil lands, and to produce and market the product of said lease; said leasehold being known and described as the Kimball lease, situate in Freedom township, Wood county, Ohio, and containing about sixty acres of land. That since March, 1896, said partnership has been in the open and actual possession of said premises, and engaged in drilling wells thereon, and producing oil therefrom. That the place nf business and office of said partnership is at Gibsonburg, Sandusky county, Ohio. That by the terms of said partnership agreement said leasehold and partnership property, consisting of structures, machinery, wells, engines, boilers, derricks, tanks, tools and other equipments of said property for the development of oil, was to be held, owned and operated by said partnership, and said partners respectively were to own the property of said partnership all and singular and to bear its ex *64 penses and share its gains in the following proportions: N. B. Ervin, Wm. M. Masterman and H. W. Townsend, each, a fourth interest, and said F. W. Zorn and F. C. Hornung, each an eighth interest.
That in the prosecution of said business said partnership borrowed large amounts of money, which were used by said partnership in its business of drilling, shooting and completing oil wells on said lease, and for other expenses of said firm, and that the real value of said lease consisted of said wells and equipment and the product of said wells;, 'that said partnership owes for money borrowed and used as aforesaid to different creditors something over five thous- and dollars; that said W. M. Masterman has become, and is, wholly insolvent. Francis H Steel is also made a party defendant, and it is averred with respect to him, that he claims some interest in, or lien upon said partnership property growing out of certain alleged transfers and incumbrances said to have been made by said W. M. Master-man to him, and that he is claiming a right to sell, and has sold certain of said partnership property, and is threat-' ening to cause a sale of certain other parts of said property of said partnership, and its oil product, by virtue of said transfers from Masterman, without an adjustment of the affairs of said partnership, the payment of its debts, or the determination of the rights of the plaintiff and his co-partners, and that the alleged transfers and incumbrances made by Masterman to Steel were for the purpose of securing and providing for the payment of a private indebtedness of said Masterman to Steel. That the interest of Masterman in the partnership property is not more than sufficient to satisfy his just proportion of the partnership debts. That since about April 1st, 1897, Steel has sold one fourth of the oil product of said partnership property, and kept and retained the proceeds thereof in violation of the rights of said partnership. *65 'That because of the facts alleged it has become impossible do continue the business of said partnership. And plaintiff iprays that the partnership may be dissolved and its affairs 'Wound up; that an accounting may be taken of the business ■ and affairs of said partnership, and the partnership property applied to -the payment óf the debts and expenses of the firm, and that Steel may be required to account for the value of the oil which he has sold. This petition was filed •on September 4th, 1897. The date of service of summons upon Steel does not appear from the papers in our hands, but on October 2nd, 1897, Steel filed his separate answer in which he°avers, that on the 20th day of April, 1897, .Masterman was the owner of an undivided one-fourth part ■of said leasehold, and that on that date, by writing duly •executed and acknowledged, he sold and transferred unto said Steel all his right, title and interest in and to said leasehold estate, the assignment aforesaid being recorded •in volume “X”, at page 167, of the records of leases of Wood county. He admits that h3 claims an estate and interest in the leasehold estate aforesaid, and denies every ■other allegation of the petition, and prays that plaintiff’s ■petition may be dismissed.
To this answer the plaintiff replies denying the allegations thereof, and averring that any assignment made by Masterman to Steel was solely as security or mortgage to secure payment of a loan made by Steel to Masterman, individually, and was not for any debt of said partnership or loan to the same. That all -of the property aforesaid was ■purchased with partnership funds; that the title thereto was taken and is held for the benefit and use of said partnership, and that any conveyance, assignment or transfer of any interest in the same that Steel may have received from Masterman, was so received with full knowledge upon the part of Steel of the facts aforesaid, and of the interest of «the paxtnershp in said property. The other defendants *66 filed answers in which they admit and adopt the averments*contained in the pleadings field by plaintiff.
From the evidence submitted, it appears that on the 15th day of November, 1894, Joel Kimball and wife executed an: instrument in which it is set forth that in consideration of seventy-five dollars, the receipt of which is acknowledged, they do grant unto N B. Ervin and William M. Masterman and their assigns,all the oil and gas in and under the premises descibed in the petition,together with the right to enter thereon at all times for the purpose of drilling and operating for oil, gas or water; to erect and maintain all buildings and structures, and lay all pipes necessary for the transportation of oil, gas and water taken from said premises, excepting and reserving, however, the one-sixth part of all the oil produced and saved from said premises to be delivered in the pipe line to the credit of the grantors.. And this instrument provides that Ervin ad Masterman and their assigns are to have and hold the premises on certain other conditions as to the amount to be paid for gas-used off the premises; as to gas being furnished to the grantors for their dwelling house; as to the burying of oil and gas lines, paying damage to growing crops, etc., and-various other provisions usual in instruments of this character, which are commonly known and designated as oib and gas leases. This instrument was duly executed and acrknowledged, and was recorded in the, lease records of Wood* county, on April 5th, 1895. By an instrument bearing: date of April 20th, 1889, W. M. Masterman and - N B, Ervin assigned and.transferred to H. W. Townsend an undivided one-fourth interest in said leasehold, and to F. CL Hornung and F. W. Zorn, each an undivided one-eighth interest therein. This instrument is also duly executed* and acknowledged, and was recorded, on September 13th,. 1897.
On April 25th, 1895, all of the alleged partners, together with Joel Kimball, the owner of said land, joined in the- *67 ■execution of what is known among oil operators as a “transvfer” or “division order,” which set forth their respective interests in the oil product from this lease as before stated, -and which was filed with the Paragon Transportation Company for its information and guidance in settling for the oil which might be delivered to it from the farm. This paper certifies that they are the legal owners of the “Erwin & Co.” wells, being the wells on the Joel Kimball farm' described in the petition, and that Kimball is entitled to one-sixth of the oil by way of royalty. It will be observed that one of the principal issues is as. to whether rtnere was and is in fact a partnership as alleged in the petition. The evidence bearing upon this issue consists of •the instruments before mentioned, and certain books of account kept by the alleged firm, and certain note's, checks, ■ etc.',given by the alleged partners in the course of the carrying on of this business, and of the testimony of the plaintiff and of F. W.Zorn as to the partnership agreement and course ■ of business, which testimony is practically undisputed. Mr. Ervin testifies that the lease was originally taken by himself • and Mr. Masterman in 1894, and that interests were transferred to the other parties in April, 1895, as appears from the instruments referred to; that at the time this lease was ■acquired and these interests were transferred, there had been no oil development upon this land or elsewhere within three quarters of a mile of it; that at or about the time the transfer was made, all of the parties then interested in ■the lease agreed to drill a test well; that they then formed •a patnership with the understanding that they were to drill ,-a test well, and that, if that should prove to be a failure, the arrangement would be terminated, and they would ■give up the lease; but if it proved to be successful, they would go on and operate the lease. Each was to bear a just proportion of the expenses of drilling the test well, and if it ■should prove successful, each was to bear a just proportion *68 of the cost of equipping and operating the well; that they were to share this expense in the proportion of their respective interests in the lease as before stated. In regard' to the sale of the oil,each was to sell his own, as the witness states “in lieu of a dividend”; that this was done so that each member might control his own share of the product, taking advantage of the markets and selling according to his-own judgment. Witness also testifies that each 'was to. bear his share of the losses if any occurred in the course of' drilling and opearting wells upon the lease; that Zorn was to be the book-keeper for the firm, and was to have charge of the financial business of the firm, but witness was to assist him therein, and that the firm-name adopted was. “The Ervin Oil Company,” That in pursuance of this arrangement they drilled a well, which, proving, sucessful, they continued to drill and operate until they have upon the. premises eight wells'; that whenever it became necessary to. have funds to carry ou these operations, assessments were made upon the members according to their holdings, and that these assessments have all been paid by the different-members of the firm, including Masterman,' but that the indebtedness of the firm, which has not been discharged by assessment, and which was incurred in purchasing casing,., tubing, machinery, boilers, rigs, drilling wells, etc., amounts to over five thousand dollars; twenty-four hundred dollars and interest being due to the New London National'Bank on a promissory note, which is signed “Ervin Oil-Company, by E. W. Zorn”, and also by the members of' the company individually, and $589,48 being due the-National Supply Company upon a note which is singed “Ervin Oil Company, by F. W. Zorn,” but is not signed by any of the individual members of the company. This-witness produces checks drawn upon the account of the Ervin Oil Company in the bank of the Gibsonburg Banking-Company in payment of debts of the^Ervin Oil Company-for supplies, equipment, etc. for the lease, signed “Ervim *69 Oil Company, by F, W. Zorn,” and states that that was the usual method of transacting the business of the company; that a fund belonging to the partnership was kept in the bank in the name of the Ervin Oil Company, which fund was produced by the collection of assessments upon the members as before stated. The books of the Ervin Oil Company, introduced in evidence, show' that the accounts were kept in a manner consistent with a partnership business and with the statements of this witness as to the manner in which the business of the Ervin Oil Company was carried on. As to the possession of the premises described in the lease, this witness and others testify that after they began operations they continued in the daily and constant occupation of the premises, producing oil therefrom, so that a person going upon the premises at anytime would have found them or their employes at work there. He testifies that all of the contracts made with the employes, and with contractors to drill wells, and in short, that all dealings with the company, were made on behalf of the partnership and in the name of the -Ervin Oil Company; and that all obligations were discharged by the company’s checks upon a fund in the bank as before stated, signed .“Ervin Oil Company, by F. W. Zorn.’’ The testimony of Mr. Zorn agrees in the main with that of'Mr. Ervin, He states that the total cost of equipping and óperating the lease since they began, all discharegd in the manner stated excepting something over five thousand dollars, still unpaid, amounts to about sixteen thousand dollars. -
In our opinion this evidence establishes a partnership, If not án ordinary commercial partnership, at least' a partnership inter sese, partaking of the characteristics of a mining partnership, having as one of its incidents a right, in each member to require that partnership property shall' be applied to the debts due to the creditors of the partnership before it shall be devoted to the discharge of the individual indebtedness of the members thereof. • There is *70 much in the nature of the business of mining for oil as carried on in this country that likens it to mining operations and the uses of mining properties where ore instead of oil is the product, and we think that many of the special rules applicable to mining partnerships so called, should be applied to the operations carried on by co-owners of oil producing property in order that the ends of justice may be reached, both as respects said co-owners, and those transacting business with them; and it is immaterial whether such co-owners shall be regarded as tenants in common or joint tenants, and whether the property used in such business shall be real estate, chattels real, or personal chattels. One of the incidents of a mining partnership is that, if a member sells his interest in the mine, the purchaser takes it subject to any lien existing in favor of a co-partner for debts due the creditors or for advances made for the use of the concern, unless he becomes a purchaser in good faith for a valuable consideration without notice of such lien. And, if a person sells his interest in a mining company while it is engaged in working its mining ground, the purchaser will be deemed to have bought with • notice of any lien resulting from the relation of the partners to each other and to the creditors of the partnership. Duryea v. Burt, 28 Cal., 569.
Each partner may transfer his interest without consulting his fellow partners, and such transfer will not work a dissolution of the partnership. Jones v. Clark, 42 Cal., 180.
It is a matter of common knowledge that customarily co-owners of oil leases and the equipment thereof, transfer their respective interests in such property, as well as in the product, without th'e consent of those interested with them as co-owners, and that purchasers thereof, are admitted into the company or firm as a matter of right, and the business is continued and no dissolution of the partnership occurs from, such transaction merely.
*71 Quoting from Lindley on Partnerships, sections 54 & 55.'
“Tenants in common or joint tenants of a mine or quarry may, or may not be partners; and the mine or quarry it•self may or may not be part of the common stock. But it is highly inconvenient, if not altogether impossible, for co-owners of a mine or quarry, to work it themselves without becoming partners, at least in the profits of the mine, and partners who work a mine or quarry in common, are regarded rather as partners in trade than as mere tenants in ■common of the land.’’
In Butler Savings Bank v. Osborn et al., 159 Pa. St., page 10, it is held that tenants in common, engaged in the improvement or development of the common property, will be presumed, in the absence of proof of a contract of partnership, to hold the same relation to each other during such improvement or development as before it began; that as to each other, their relations depend on their title until, by their agreement with each other, they change it, and that when tenants in common of on oil lease, agree to carry on operations upon their land, each contributing toward the expenses in proportion to his respective interest in the land, they will be considered with respect both to themselves and third persons, as the' ordinary owners of and working their respective shares of the wells, responsible only for their own acts, subject to no law of partnership whatever, and possessing distinct rights in the property; :and in that case the tenants in common, having entered into an agreement with each other to drill wells on the leasehold property, each to pay one-half of the costs of Sinking ’the wells and pumping the oil, the oil produced to be run into pipe lines serving the district, and there credited one-half to each of the tenants in common, it was held that ■no partnership existed between the tenants in common. *But in that case as W9Ü as in Dunham, Appellant, v. Love-rock, 158 Pa. St. 197,.and Neill, Appellant, v. Shamburg, lb. 263, and other cases decided by the courts of Pennsyl *72 vania, the doctrine is fully recognized that a partnership for the operation of an oil lease may exist between co-owners, and that the agreement of the parties with respect to the carrying on of the business has a controlling effect. In the case at bar we have the'undisputed testimony of the-witnesses as to the fact that a partnership was agreed upon,, and as before stated, the method of carrying on the business, as shown, by the evidence, including the books; checks, notes, etc., introduced in evidence, is consistent with a partnership arrangement, and tends to corroborate and confirm the statements of the witnesses that there was-a partnership. In Lindley on Partnerships, which is an-English work, it is said that a partnership will not result under an agreement to share the gross returns, or the gross products; but that result does not seem to follow in the United States. In this country a partnership may exist though the agreement is to share the gross products. Indeed it is not apparent why the English rule obtains. The actual or gross returns include profits, if profits have been made, and while such returns do not include losses, if losses are incurred, yet, where the persons associated together in business, agree to and do meet all the expenses and financial demands of the business through the medium of assessment or otherwise, though they divide the gross product, they have in the end, as the result of their enterprise, the net profit only, and the result is precisely the same as if the agreement were in the first instance to share the net profit instead of the gross product.
In the Farmers’ Ins. Co. v. Ross & Lennan, 29 Ohio St., page 429, Judge Gilmore speaking for the court at page 432, quotes the following paragraph from Story on Partnership section 27, to-wit:
“When each of the parties contributes labor and services and materials in the manufacture of any articles of trade, and the articles, when made, are to be equally or propor *73 tionately shared between them, they will be deemed partners inter sese-, for the articles manufactured, and so to be • divided, may well be deemed the profits or losses of their: joint undertaking and business.”
And, while the decision of that case does not rest upon the principle quoted, yet, this language from Justice Story’s work is quoted with approval, and it is distinctly intimated that if necessary it would have been applied to-that case. This doctrine finds support in Autary v. Fries, 59 Ala., 587; Everett et al. v. Chapman et al., 6 Conn., 347; Stapleton v. King, 33 Iowa, 28; Curtis v. Cash, 84 N. C. 41, and Jones v. McMicheal, 12 Rich., (S. C. ) 176.
We hold that where all the other indicia of a partnership ’ are unquestionably present, the mere fact that the gross■■ product is to be divided, instead of the net profit; will not necessarily prevent a partnership, especially where by reason of the partnership obligations being met from time to-' time by means of assessment or otherwise, the result to the partnership is precisely the same as if the net profits were • the subject of division, instead of the gross product.
It is zealously contended, however, on behalf of the defendant Steel, that where the title to real estate or chattels real amounting to a right to produce oil is vested in an individual or individuals, section 4112a of the Revised Statutes precludes a court of equity from giving effect, to the . principles which govern such courts in other cases where-they treat such property as partnership property, and such-titles as held in trust for the partnership, and that this same section of the statutes prevents the courts from giving effect to the ‘‘partners’ lien” upon such property. The attaching of the partners’ lien, or of the equity which results in real estate, or an interest therein, being regarded" and treated as partnership property, though the legal title-is vested in a member or members of the firm, does not, in our judgment, come within the purview of section 4112a- *74 Revised Statutes, which provides: “that all leases, licen-ses and assignments thereof or of-any interest therein, here'tofore executed, given or made, for, upon, or concerning ;any lands or tenements in this state, whereby any right is given-or granted to a party to sink or drill wells thereon for natural gas and petroleum, or either,or pertaining there'to, -shall be recorded in the lease record * * * and shall not have any force or effect until filed for record as ■ aforesaid,’’etc. Such equitable results arising from the pur- • chase money having been paid by the partnership, and the property having been used for partnership purposes, are not affected by this statute. They do ’ not arise out of the terms or provisions of leases or licenses or assignments thereof, or of any interest therein, or other instrument falling under the provisions of this section; nor does the recognition of such equities amount to a transfer of an interest in land, either by the parties or by the courts, within the meaning of said section. Land, or interests in land, may be regarded and treated as partnership property notwithstanding the provisions of the statute of frauds, or the statute governing conveyances and incumbrances, including section 4112a Revised Statutes. Norwalk National Bank v. Sawyer, 38 Ohio St., page 339; Page v. Thomas, 43 Ohio St., 38; Kemper v. Campbell, 44 Ohio St., 210; Bank v. Johnson et al., 47 Ohio St., 306.
The defendant Steel is not in a situation to object to ■ the application of these rules giving effect to the partners’ ’ lien and to the trust in favor of the partnership. Taking ■no account of the evidence which tends to show that he was advised of this partnership relation, or, by the firm’s • possession of the property, was put upon inquiry and had constructive notice as to such relation, and the rights growing out of it, we look for a moment at the nature of ' his claim and the circumstances under which it arose. About November 30th, 1896, Masterman borrowed from ’ Steel two thousand dollars, for which he gave his promis *75 sory note; at the same time he signed and gave to .Steel a certificate of transfer, addressed to the Paragon Refining, Company (a branch of the same corporation as the Paragon Transportation Company, before referred to), of which. Steel was the vice president and general manager, authorizing said company to transfer to Steel, upon their books-,, the one-fourth interest of Masterman in the wells on theKimball farm. This paper, which was received by Steel and which bears his signature upon that part which certifies-to the Paragon Refining Company that he is the owner of the interest thus transferred. to him, names the interest transferred as “an interest in the wells of the Ervin Oil Company’’ on the Joel Kimball farm. Afterwards, on the 20th of April, 1897, and before the maturity of this note,. Masterman executed in due form an assignment to .Steel of' his interest in the Kimball lease.. This was recorded on-September 27th, 1897, in the lease records of Wood county, Ohio. Omitting the acknowledgment, it reads as follows:
“This assignment made this 20th day of April, A. D. 1897, by and between W. M. Masterman, of Gibsonburg,. Ohio, of the one part, and F..H, Steel, of Toledo, Ohio,, of the other part, witnesseth, that for'and in consideration of one dollar to me paid to my full satisfaction by the said F. H. Steel, I have sold, assigned and transferred, and by these presents do hereby sell, assign and transfer unto the-, said F, H. Steel, all my right, title and interest in the - following leases of land situate in the counties of Sandusky and Wood, and state of Ohio, described, as follows: A-half interest in the west half of the north half of the northeast quarter of section 12; also the north half of the southeast quarter of the southwest quarter of section 1, both of Woodville township* Sandusky county, Ohio, containing sixty (60) acres leased by Wm. Bidke. A one quarter interest in the south sixty (60 )acres of the northeast quarter-of section 25, Freedom township, Wood county, Ohio,, leased by Joel Kimball to N. B. Ervin and W. M. Master-man. To have and to hold all my right, title and interest m the above mentioned leases, (subject to the con- *76 editions mentioned therein), together with the wells, tubing, ■ casing and fixtures thereon, or which pertain thereto, to ■ the said F. H. Steel, his heirs and assigns. In witness whereof, I have hereunto set my hand and seal the day and year first mentioned.
Hpi(Signed)
‘‘W. M. Masterman.”
N‘In the presence of,
‘‘D. D. Grant, Thos. Kelly.”
■(Acknowledged in due form.)
From the testimony of Steel and Masterman, as well as fiom this instrument, it appears that the transfer certificate of Novemebr 30th, 1896, was given as a security for this loan, and that this assignment of April 20th, 1897, was given as a further security for the debt then existing, and that there was no additional or new consideration therefor.
That Steel was not in the situation of an innocent purchaser for value is quite clear from the authorities.
Eaton & Company v. Davidson, 46 Ohio St., 355; Page v. Thomas, 43 Ohio St., 38; Grever & Sons v. Taylor, 53 Ohio St., 621.
We hold, therefore, that the prayer of plaintiff’s petition should be and it is granted, excepting as to the oil sold by Steel before he was served with process in this case. It ap. pearing that the partnership agreement authorized each partner to sell his respective interest in the oil produced, we hold that Steel acquired by the transfer certificate a perfect title to the oil produced and sold prior to the time the suit to reach Masterman’s interest in the oil, as well as the property, was pending as to Steel. That, while a perfect title to the oil produced could be conveyed, yet the •partners had a right to impress the partners’ lien upon the oil production not actually brought to the surface, reduced to possession and sold, as well as upon the other partnership property; that the institution of the suit was notice, not only of the partners’ rights, but of their purpose in that respect, and that it operated by way of Us pendens as to all of the property aforesaid.
Bartlett & Wilson, Andrews & Andrews, for Plaintiff.
.Sivayne, Hayes & lyler, for Defendants.
Since this is an action to wind up the business of the •partnership, and in doing this it becomes necessary to ascertain the state of the account of each partner, and the in■terst of each, including Steel, in the partnership- stock and property, we conclude to order that all’the costs, including 'those incurred upon the trial of the issues between Steel and ¡the others,shall be paid out of the partnership fund.
A decree will be entered accordingly.