Statement of Facts.

THOMAS McCONNELL v. A. St. CLAIR DENVER, S. W. SANDERSON, PETER DONAHUE, S. B. WELLER, and J. H. LATHAM.

Ditch Companies for Sale of Water.—Unincorporated ditch companies, organized for the sale of water to miners and others, the stock in which is bought and sold at the pleasure of the owners, without consulting the co-owners, differ from ordinary commercial partnerships. Some of the incidents of a partnership pertain to such companies, and some of mere tenancies in common likewise pertain to them.

Power of Member of Ditch Company.—A member of such a company has no general authority by virtue of such membership to bind the company by his contracts.

Power of Superintendent of Ditch Company.—The superintendent or managing agent of such company has no authority to bind the company by a promissory note, given for materials used by the company, unless the authority to give such note is expressly conferred upon him by the company, or such authority may be implied from his acts recognized by the company, with full knowledge of the acts at the time of the recognition.

Note of Ditch Company.—If an unincorporated ditch company duly authorizes its superintendent to give the company note for materials before then purchased by the company, all the members are bound by the note, whether they were such members when the materials were purchased or not.

Contract of a Company.—If lumber is furnished a ditch company under the agreement that it is to be paid out of the proceeds of the ditch of the company, and the proceeds have all been faithfully applied in payment, according to the agreement, the person who furnishes it is not entitled to recover the deficiency against the members of the company.

Appeal from the District Court, Sixth Judicial District, City and County of Sacramento.

January 31st, 1866, the plaintiff commenced an action against the defendants on the following promissory note:

$2,600.                              Coloma, June 7th, 1862.

On or before the first day of October next, the Coloma Canal Company promise to pay Samuel McConnell & Company the sum of two thousand six hundred dollars.

A. St. C. DENVER,
Secretary and Agent for the Coloma Canal Co.

The Coloma Canal Company, in the Winter of 1861 and 1862, consisted of the defendants Denver, Sanderson,

Donahue, Weller, and Mrs. Robinson. Its property was a ditch for the conveyance of water, on the north side of the South Fork of the American River, in El Dorado County. The capital stock of the company was forty-two thousand dollars, divided into eighty-four shares, of five hundred dollars each. To each owner of stock a certificate like the following was issued:

### COLOMA CANAL COMPANY.

No. *Shares*, 84.                    [54]                    *Par Value*, $500.

CAPITAL STOCK, $42,000.

To N. W. CHAPMAN:

*THIS CERTIFICATE* entitles you to one share in the COLOMA CANAL COMPANY, the same having been registered on the books of the company this the 7th day of September, A. D. 1852.

S. S. BROOKS, Secretary.          FRANCIS CLARK, President.

Mrs. Robinson owned twenty-five shares, but prior to June 2d, 1862, for about one year the same had been in the hands of defendant Latham, as a pledge to secure money she owed him. On said second day of June Latham became absolute owner of the stock. For several years prior to 1861 the company had been transacting business, and during most of the time, particularly for three years before and during 1861 and 1862, defendant Denver had acted as superintendent. The company, before 1861 and 1862, had not been in debt. In the Winter of 1861 and 1862, during the flood, a portion of its flume was washed away. The plaintiff and Samuel McConnell, who were at that time partners, under the name of Samuel McConnell & Co., at request of defendant Denver, furnished lumber for the company, which was used in the repair of the flume. On the day of the date of the note Denver, at request of the plaintiff, gave the same. Before the action was commenced there had been several payments made on the note, as follows: April 9th, 1863, five hundred dollars; October 28th, 1863, two hundred dollars; June 4th,

1864, two hundred dollars; June 17th, 1864, two hundred dollars; September 5th, 1864, one hundred and sixty-two dollars and fifty cents; May 1st, 1865, eighty-one dollars and twenty-five cents; and June 5th, 1865, eighty-one dollars and twenty-five cents. Samuel McConnell died in 1865, and plaintiff sued as his surviving partner.

The Court dismissed the action as to defendant Latham, and rendered judgment against the other defendants, except defendant Weller, who had not been served with summons.

The defendants against whom judgment was rendered appealed, and the plaintiff appealed from that portion of the judgment in favor of defendant Latham.

The other facts are stated in the opinion of the Court.

*Bowie & Catlin*, for Defendants and Appellants.

The judgment is erroneous as to Latham. It should have been against him as well as the other defendants. This point will doubtless be made by the plaintiff on his appeal; but we claim that we are entitled to make it on our appeal, for we are prejudiced by the judgment in favor of Latham. The general rule is, that an incoming partner is not liable for the old debts of the firm; but if he receives the benefit of the contract equally with the old members, he may be. (Collyer on Part., Sec. 522.)

Latham had an equitable interest, which afterwards ripened into a legal estate. His equitable title would have become worthless but for the expenditure. But, independent of this, the contract in suit was not made until after Latham became a member of the firm. It was, at the time of its making, the contract of the firm, as then constituted. Denver was then as much the agent of Latham as of the other defendants; and the contract was as much his as theirs. (Collyer on Part., Sec. 524.) It is settled that a note given by the new firm for a debt due from the old is a ratification by the new firm, which will bind the new partner as well as the old. (Collyer, Sec. 525.)

If the defendants were partners at all they were not ordinary trading partners, but members of what is denominated a mining partneship by this Court in *Skillman* v. *Lachman*, 23 Cal. 198. This Court there distinguishes between ordinary trading partnerships and what it calls mining partnerships. The points of difference there stated are shown by the evidence (as to which there is no conflict) to exist in the present case. Here, as there, each owner has bought in and sold out at pleasure. If, there, one member cannot bind the firm by a firm note, by parity of reason, he cannot here. We ask particular attention to that case, as we consider it conclusively in our favor, if the Court should adopt the theory that the defendants were in any respect partners.

But we claim that they were not partners, even in the partial sense of *Skillman* v. *Lachman*, but tenants in common in the sense of *Bradley* v. *Harkness*, 26 Cal. 76. One tenant in common cannot rebuild without the consent of the others, except at his own expense. Nor can he bind his cotenants by contract made in their name.

If any partnership existed between the defendants, it related to the business of selling water, and did not embrace the reconstruction of the canal when destroyed. (*Abel* v. *Love & Fowler*, 17 Cal. 239.)

Respondent may insist that Denver is liable, though his co-defendants are not. If such a point is made, it is conclusively answered by the cases of *Sayer* v. *Nichols*, 7 Cal. 537 ; *Hall* v. *Auburn Turnpike Company*, 27 Cal. 255 ; *Hall* v. *Crandall*, 29 Cal. 568.

*Robert Robinson*, for Plaintiff and Respondent.

The defendants were parties doing business, as stated in the complaint. They were not an incorporated company, but held the interest in the concern by virtue of certificates of stock. This renders them clearly liable as partners. (Collyer on Partnership, Sec. 1,078, and authorities cited; also, Sec. 1,079.)

The American authorities fully sustain this view. (*Tappan* v. *Bailey et al.*, 4 Met. 529.)

And this rule remains unchanged by any decision of this Court. The suits in relation to mining partnerships stand upon entirely different grounds. They are a class of cases well distinguished from all others, both at common law and by our Courts, and are therefore not relevant to this point. The testimony of the defendants themselves proves clearly a partnership. They shared the profits and losses. Either of them acted in the business as the agent of the whole, without any special appointment.

By the Court, Sawyer, C. J. :

We think the evidence insufficient to justify the third finding, to the effect that the defendants executed the note upon which the action is brought, by their agent, Denver, and that said Denver had full power and authority to make and execute said note, by virtue of his being a partner in and agent for the company.

There is no conflict in the evidence as to the material facts in the case, and it shows, that the defendants constituted one of the ordinary unincorporated ditch companies so common in the mining regions, owning a ditch which conveyed water from a certain stream to a distant mine, for sale to the miners for mining purposes. The interests were held by the owners in different proportions, in shares, represented by certificates of stock, which were bought and sold at the pleasure of the owners, without consulting their co-owners. The ordinary relations of the stockholders in these associations, like those in the usual mining companies, organized and conducted upon similar principles, and sometimes called mining partnerships, are not those of strict commercial partnerships, but are more in the nature of tenancies in common. (*Bradley* v. *Harkness*, 26 Cal. 77; *Skillman* v. *Lachman*, 23 Cal. 201; *Duryea* v. *Burt*, 28 Cal. 587; *Abel* v. *Love*, 17 Cal. 237; *Set-*

47

*tembre* v. *Putnam*, 30 Cal. 493.) Some of the incidents of a partnership pertain to them, and some of mere tenancies in common, but the powers of the several members by virtue of being members are different from those of commercial partnerships. A member of one of these associations has no general authority, by virtue of such membership, to bind the company by his contracts. Nor has the managing agent any authority other than that conferred upon him, either expressly, or by necessary implication from his acts recognized by the company, with full knowledge of the acts at the time of the recognition. (*Skillman* v. *Lachman, supra.*) The finding of the Court evidently resulted from overlooking this distinction between commercial partnerships and associations of this character. The remarks of the Court in *Skillman* v. *Lachman* are in point: " But there is still a more important objection to the findings and judgment in this case. There · was no evidence of any authority having been given by the company, or Lachman to Sprout, a member of the company, and the managing agent, or foreman, to execute a promissory note in the name of, and binding the company, for the indebtedness due the plaintiff, or any general authority to that effect. In fact, several members, including Lachman, testified that they never gave any such authority. It is clear that the law does not, in the case of mining partnerships, imply any such authority, either to a member of such partnership, or to its managing agent. In this respect the law is different from that of ordinary commercial partnerships. It was clearly the duty of the plaintiff to prove that the person executing the note in the name of the company had power and authority to do so. He might have had power to purchase the lumber for the use of the mine, but that is very different from authorizing him to execute a note in the name of the company, bearing interest at the rate of three per cent per month." (23 Cal. 207.)

So, in the present case, there was not only no evidence to show that Denver had express authority to execute the note, but, it was affirmatively shown that he had not, and it was

further shown, that one of the members, at least, who is defendant, had expressly declared to him that he would not consent to the incurring of any personal resposibility in any form whatever. The making of notes was no part of the ordinary business of the company, nor was it a necessary incident to its business, nor the practice of the company in conducting its business. It owned a ditch, and sold water, and those who managed it collected the moneys paid for water, paid the various expenses out of the receipts, and divided the balance among the owners. This, according to the testimony, was the regular course of its business for a series of years, from somewhere about 1854 down to 1862, when the note in suit was given. There is nothing to show that any authority was ever given to the managing agent, either expressly, or by necessary implication, to execute notes, or that any such authority was ever recognized by the stockholders. Only two instances, besides the one in question, of giving a note by the managing agent, are shown during the whole existence of the company, and these two notes were connected with the same general transaction as the one in suit; and, so far as the evidence shows, these were also given without the knowledge, or assent of the owners, other than the agent himself. The agent testifies that the instances referred to are the only ones that occurred during his management. In the case now in question, the agent also testifies, that when Samuel McConnell asked him for the note, he informed him that he had no authority to execute one. He further testifies that the arrangement, in fact, was, that the lumber, for which the note was given, was furnished for the extensive repairs of the ditch, made upon the express agreement that it was to be paid for out of the proceeds of the sales of water; and it appears that the proceeds were all applied in payment. The evidence shows that the owners, so far as they were informed upon the subject at all, were informed that this was the arrangement, and none of them knew of, or assented to, the execution of any note at all.

We think the evidence not only shows, that there was no express authority given to Denver to execute the note in suit, but, also, that none can be inferred from the general course of the business of the company, or implied from any authority exercised by the agent with the knowledge or assent of the owners. It also appears that such as expressed their views positively refused to allow any personal responsibility to be incurred in making the large repairs required by the damage done by the floods of 1862, and that Samuel McConnell, when he took the note, was expressly informed by Denver that he had no authority to execute it. The case is clearly within the decision of *Skillman* v. *Lachman*, before cited.

Upon the findings, the judgment should have been against Latham, as well as the other defendants. The note purports to be the note of the company, and the third finding is, that Denver had authority to make and execute the note. The sixth finding is entirely consistent with the third, and finds that Latham was a member of this company at the time of the execution of the note sued on. If he was a member when the contract sued on was made, and the contract was executed by a party duly authorized, he must, of course, be bound by it, as well as the other members.

The judgment and order denying a new trial must be reversed and a new trial had, and it is so ordered.

Mr. Justice SANDERSON, being disqualified, did not participate in the decision.