[Nos. 2,116, 2,117.]

JAMES F. HARRIS, ADMINISTRATOR OF THE ESTATE OF N. CHATER, DECEASED, v. THE SAN FRANCISCO SUGAR REFINING COMPANY, GEORGE GORDON, AND JAMES B. BOND.

PRACTICE IN LAW AND EQUITY.—The mode of reviewing the action of the Court upon an issue of fact is the same, whether the case is at law or in equity.

REVIEW OF QUESTION OF FACT.—In order to review a question of fact, there must be a motion for a new trial.

REVIEW OF ACTION OF REFEREE. — If a referee tries a question of fact raised by the pleadings, the Court cannot review his action on such issues, unless a motion is made for a new trial.

IDEM.—If a referee tries a collateral question, not made an issue of fact by the pleadings, his action thereon may be reviewed by the Court, by exceptions to the report, without a motion for a new trial, and his report is not binding on the Court until adopted by it.

QUESTION DISCUSSED.—Is not the manner of bringing the testimony before the Court in case of such exceptions to be regulated by rules to be adopted by the Court?

REPORT OF REFEREE ON A COLLATERAL QUESTION. — When a collateral question, not made an issue by the pleadings, is referred to a referee, his finding of the facts does not take the place of a special verdict, as provided in section one hundred and eighty-seven of the code, and is not binding on the Court until adopted by it.

REPORT OF REFEREE.—When a referee reports his decision upon the whole case, his report stands as the decision of the Court; when he reports the facts only, his report is a special verdict.

NOTICE OF MOTION FOR NEW TRIAL.—If, in an action to obtain the specific performance of a contract, and to have an account taken, the principles upon which the account is to be taken are not raised, as issues in the pleadings, but an issue is made only on the plaintiff's right to have the account taken, and the Court enters an interlocutory judgment, that the plaintiff is entitled to a specific performance, and to have an account taken, and orders a reference to take the account on principles fixed in the order, a notice of motion for a new trial need not be given until ten days after the confirmation of the report of the referee.

A FINAL JUDGMENT.—The confirmation of the report of a referee, and an order that judgment be entered for the plaintiff, without annunciation of judgment upon the facts found, and a determination of the particular relief to which the plaintiff is entitled, is not the rendition of the judgment from which an appeal may be taken.

UNDIVIDED PROFITS OF A CORPORATION.—In an action against a corporation and the officers controlling the same, to compel the specific performance of a contract to issue a portion of the stock to the plaintiff, and for an account of the dividends and profits on the stock, it is erroneous to give the plaintiff his share of the stock, and also the same proportion of the undivided profits of the company.

STOCK OF CORPORATION — UNDIVIDED PROFITS.—The stock of a corporation represents its undivided profits, and one who receives his share of the stock, acquires by virtue of the stock, his due interest in the undivided profits.

DIVIDEND OF CORPORATION PAYABLE IN STOCK.—In an action against a corporation and its officers, to recover or have issued to the plaintiff a certain proportion of the stock of the corporation, and to have an account

taken of the profits and dividends on the stock, if a dividend of the company has been paid to the stockholders, by an increase in the capital stock, and an issuance of new shares to those to whom the dividend was due, the plaintiff cannot, in taking the account, recover, in money, the dividend thus declared, especially, if he also recovers his proportion of the stock thus divided.

APPEAL from the District Court of the Twelfth Judicial District, City and County of San Francisco.

This action was commenced by Nathaniel Chater, in May, 1858, who died during the pendency of the action, and the administrator of his estate was substituted as plaintiff.

The agreement between Chater and defendants Gordon and Bond was dated New York, April 4th, 1856. The agreement provided that the parties should form a corporation in San Francisco, to be called the San Francisco Sugar Refining Company. The corporation was formed the last of May, 1856, in San Francisco, with a Board of three trustees, and the trustees named to manage the affairs of the corporation the first three months were, Chater, Gordon, and Bond. The plaintiff, for several months after the corporation was formed, was actively employed in its business, but became paralyzed in October.

The complaint averred that the plaintiff believed that one third of the stock was issued to him on the books of the company, but was not delivered to him, and that he demanded one third of the stock from the company, and an account of his portion of the profits or dividends therefrom. There were further averments, that Gordon and Bond, owning two thirds of the stock, controlled all the proceedings of the company, and were seeking to become the exclusive owners of all the property and effects of the company, and to exclude plaintiff from all his interest therein. That in December, 1856, without the plaintiff's knowledge, they had declared his trusteeship vacant, and that the defendants refused to account to him, or deliver him his stock, and that

the profits or dividends of the company had exceeded one hundred and fifty thousand dollars, and that the plaintiff's share thereof exceeded the principal and interest on the notes given by him. The prayer asked for judgment that the plaintiff owned one third of the stock, property, and effects of the company, and that the defendants be compelled to issue, transfer, and deliver the same to him, and that they be compelled to state an account of all the profits or dividends made or received by the defendants, or either of them, upon one third of the stock, and that defendants be compelled to pay the same, less the principal and interest of the promissory notes.

On the 26th of May, 1859, the capital stock of the company was increased to three thousand shares, of one hundred dollars each, being an addition of two thousand shares. The referee took the account up to February 18th, 1860, the date of the interlocutory decree. He found that one third of the profits of the company were twenty-eight thousand four hundred and sixty-five dollars and seventy-five cents; and that after deducting the note and interest, there was due the plaintiff eight thousand seven hundred and eighty-five dollars and fifty cents. In this account of profits he included a dividend of one hundred and three thousand six hundred and seventy-six dollars and fifty-four cents, which had been declared by the following resolution, passed August 18th, 1859:

"*Resolved*, That these profits be divided amongst the shareholders of the company, as follows: three thousand six hundred and seventy-six dollars and fifty-four cents in cash, and one hundred thousand dollars in the increased capital stock of the company."

A preceding resolution, adopted at same meeting, set forth this to be the condition of the company, as appeared from the balance sheet of May 31st, 1859:

| | | |
|---|---:|---:|
| Assets of the company.................................. | | $321,577 33 |
| Consisting of good debts and merchandise...............................$119,339 58 | | |
| Buildings, machinery, and equipment of refinery, at cost........... 202,137 75 | | |
| | | $321,577 33 |
| Liabilities amounting to.............. 117,900 79 | | |
| Made up of amount due to creditors ...................................... 100,396 60 | | |
| Amount due stockholders for loans 17,504 19 | | |
| | | $117,900 79 |
| | | $203,676 54 |

Showing a surplus of two hundred and three thousand six hundred and seventy-six dollars and fifty-four cents, viz: the original capital stock subscribed, one hundred thousand dollars, and one hundred and three thousand six hundred and seventy-six dollars and fifty-four cents of profits.

The Court gave judgment against the defendants for eight thousand seven hundred and eighty-five dollars and fifty cents, on the report of the referee. The first part of the interlocutory decree read as follows:

"It is ordered, adjudged, and decreed that plaintiff owns and is entitled to one third, or three hundred and thirty-three and one third original shares, of the capital stock of the San Francisco Sugar Refining Company, and all duplications, increase, profits, and dividends made or accrued upon said one third since the organization of said company; and said San Francisco Sugar Refining Company is ordered and directed to issue said stock to said plaintiff, subject to the restriction that he is not allowed to sell the said stock prior to the 4th day of April, 1861.

"And it is further ordered, adjudged, and decreed that said San Francisco Sugar Refining Company is entitled to have and receive from said plaintiff, for his said one third,

the sum of twelve thousand and five hundred dollars, with interest from the 1st day of September, 1856, at the rate of two per cent per month, subject to the accounting between the said plaintiff and said company, as hereinafter ordered."

The defendants appealed.

The other facts are stated in the opinion.

*Doyle & Barber* and *J. P. Hoge,* for Appellants.

The decree is simply a decree of specific performance of the contract of April 4th, 1856, making the company liable, in the place of Gordon and Bond, who contracted for it. That was the whole object of the complaint, and is the whole scope of the decree.

The respective rights of the parties being thus declared by the interlocutory decree, the taking of two accounts became necessary, viz: an account of what dividends, profits, gains, or advantages of any kind the stockholders in the company had derived from the ownership of their shares, in order that the like might be decreed to the plaintiff or his stock; and second, a debtor and credit account between the plaintiff and the company, in order that the balance due by the one to the other, whichever way it was, might be decreed. So far all seems plain enough, and the decree provided accordingly. It is clear enough, too, that so far as the dividends due the plaintiff on his shares of stock consisted of cash, they were to be credited to him in the second account above mentioned, because such application of them had been expressly contracted for, and was provided in the decree.

Now, on carrying this decree into the master's office, what account was he required first to take? In other words, what were the profits, increase, and dividends on the three hundred and thirty-three and one third original shares of stock belonging to the plaintiff, whereof he was to take an account? Obviously, the dividends declared by the company from time

to time on that number of shares, and which he would have received had they been issued to him at first, as contracted for.   The only share of profits which a stockholder is entitled to receive from a corporation is the dividends declared from time to time on the stock he holds.   All shares in the same company are of equal rank and right.   Whatever advantage or profit the holder of one share derives from its ownership, the holder of another is entitled to the like; and neither is entitled to participate in the company's profits, except to the extent of the dividends declared on the stock.   For such dividends he can maintain assumpsit against the company, and, of course, they form the subject of set-off against any money demand the company may seek to enforce against him.

It was suggested to the Court, however (and truly), at the time of pronouncing the interlocutory decree, that this company had, pending the suit, enlarged its capital stock, augmented the number of its shares, and declared a stock dividend; and that suggestion, or even the possibility that profits or advantages might have been divided to its stockholders in stock, or in some form other than cash, led the parties in drawing their decree, and the Court in adopting it, to introduce in it the words "profits," "increase," "duplications," "dividends," etc., in order to express in the fullest manner that the plaintiff, being entitled to have his stock, as of the date of its original creation, was entitled to have with it all the fruits, of every kind, it would have borne him had it been issued and delivered to him at that time.   Such is the whole meaning of those pleonasms in the decree.

The master or referee, however, on considering the decree, fell into the error of attributing to these words of amplification—"profits," "duplications," etc.—a significance entirely beyond their import, or the sense intended to be given them. He construed them to mean that he was to take an account of the profits which the company had gained in the course

of its business, and credit the plaintiff with one third thereof, just as if he had been a copartner instead of a stockholder. The interlocutory decree established the plaintiff's right to the stock and its profits, on paying for it the agreed purchase money and interest. The dividends due the plaintiff on the stock were to be applied on the sums due by him on the purchase money, and the balance, whatever it might be, was to be paid by the one party to the other. This operation involved a debtor and creditor account between the parties, the result of which was necessary for the information of the Court, to enable it to render its final judgment.

The reference to Mr. Thornton, directed in the decree, was under the second subdivision of section one hundred and eighty-three of the Practice Act. It was to take an account which was necessary for the information of the Court before judgment.

The report on such a reference is strictly analogous to a master's report on a reference to take an account; when filed it is open to objection by either party, and before further proceedings can be founded on it, requires the assent or confirmation of the Court. In this case, all further directions were expressly reserved in the interlocutory decree till the coming in of the report.

The proper mode of objecting to a report on such a reference is, and always has been, not by motion for a new trial, but by exceptions to the report. On the argument of those exceptions, the Court examines the proceedings of the referee, and corrects any errors into which he may have fallen. It may confirm or overrule the report, in whole or in part; send it back to the referee for further evidence; or, if that be unnecessary, make the necessary corrections in it, and confirm it as corrected. For the purpose of examining the referee's conclusions, the Court must have the same light in all respects that he had. The evidence taken before him is deemed to be taken before the Court itself for that purpose.

The precise manner of bringing the testimony taken before the referee, in such cases, to the knowledge of the Chancellor, in connection with exceptions to the report, is matter of practice, and discretionary; it is usually regulated by general rule. There being no general rule for such cases in the Court below, it properly adopted the practice which the circumstances of the case suggested as most convenient, by its order of December 19th, 1864, under which the referee reported the substance of all the testimony taken before him.

*G. F. & W. H. Sharp*, for Respondent.

The statute not only fails to countenance the theory adopted by the appellant as to the effect of a reference, but the decisions of the Court upon this subject have been uniformly against this theory. As early as 1852 the Supreme Court of this State said: "Upon the report of a referee under the statute, if it contain sufficient on which to base a judgment, it is the duty of the Court to enter judgment; and it has no right to entertain any objections whatever. After the rendition of the judgment the Court may order a new trial, and set aside the report." (*Headley* v. *Reed*, 2 Cal. 325.) Here the referee reported that Chater was entitled to a certain sum of money. Manifestly, upon its face it contained sufficient matter whereon to base a judgment, and was, therefore, directly within the spirit and text of the foregoing decision. In *Grayson* v. *Guild*, 4 Cal. 125, the doctrine of *Headley* v. *Reed* was affirmed, the Court holding in that case, which was a bill in equity for an accounting, that when an action is referred to a referee, who files a report upon the face of which there is either no error of law or fact, or, if any, no exceptions taken before him, it was error to grant a new trial in the Court below.

CAL. REPS. XLI—51

(*Tyson* v. *Wells*, 2 Cal. 131.)   The report of the referee upon the facts must be considered like the verdict of a jury. (*Walton* v. *Minturn*, 1 Cal. 362.)   And, like a verdict, where the testimony is conflicting, will not be disturbed.   (*Ritchie* v. *Bradshaw*, 5 Cal. 228; *Peck* v. *Vanderberg*, 30 Cal. 11.) The presumption is in favor of the findings.   (*Donahue* v. *Cromartie*, 21 Cal. 80.)

To adopt the remedy of exceptions in equity cases is to hopelessly unsettle this system of practice, and in effect bring us back to the old chancery rules.   From the able and ingenious argument of the appellants' counsel, one would suppose that our code not only sanctions this result, but adopts the practice laid down by Mitford, Tidd, Daniel, and Norbury.   (*Allen* v̇. *Hill*, 16 Cal. 113; *Hutchinson* v. *Bours*, 13 Cal. 50; *Casement* v. *Ringgold*, 28 Cal. 340; and *Hihn* v. *Peck*, 30 Cal. 287.)


By the Court, TEMPLE, J.:

This is a bill to obtain specific performance of a contract between Chater, Bond, and Gordon, whereby they agreed to incorporate for the business of refining sugar in San Francisco, with a nominal capital of one hundred thousand dollars, divided into one thousand shares.   Each party was to take three hundred and thirty-three and one third shares, and pay twelve thousand five hundred dollars.   Chater, having no means, was to give his notes for the amount, drawing interest at two per cent per month, and Gordon and Bond were to receive his stock as collateral, and thereupon raise or advance his share.   The dividends on Chater's stock were to be applied to paying the interest and principal on his notes.   The plaintiff asks a decree for one third of the stock, and the profits and dividends upon the stock.

An interlocutory decree was entered, adjudging that Chater was entitled to recover one third of the stock, and all

"duplications, increase, profits, and dividends made or accrued upon said one third since the organization of said company." That the plaintiff should pay twelve thousand five hundred dollars, with interest at two per cent per month, from the 1st day of September, 1856, and that an account be taken between Chater and the company, to ascertain the balance which might be due to either, and, thereupon, a referee was appointed "to take the account of the profits, increase, and dividends of said stock belonging to plaintiff under his decree, and to state an account between the San Francisco Sugar Refining Company and plaintiff."

And it is further ordered that all further "directions be reserved until after said referee makes his report, when either party is at liberty to apply to the Court, as occasion may require."

The referee filed his report November 3d, 1864, which he stated on account, and ascertained a balance due plaintiff of eight thousand seven hundred and eighty-five dollars and fifty cents. No motion for a new trial was made upon the filing of this report, but within ten days after notice of the filing the defendants filed exceptions to the report, and on the nineteenth of December following obtained an order requiring the referee to file a statement of the evidence before him. This additional report was filed July 1st, 1865. On the 21st of August, 1865, the exceptions to the report were overruled and the report confirmed. On the thirty-first of the same month notice of motion for a new trial was given. Upon this motion a statement was prepared and filed, and the motion denied on the 8th of February, 1868. An appeal was taken from this order, and is the first appeal in this case.

Afterwards, on the 26th of October, 1868, a final decree was entered, and thereupon defendants made another motion for a new trial, which was also denied, and the last appeal is taken from this order, and also from the judgment.

Objection was made in the Court below to the consideration of the exceptions, on the ground that the action of the referee can only be reviewed on motion for a new trial under the one hundred and ninety-fifth section of the Practice Act. This position was sustained, and the Court refused to consider the exceptions. The Court also, acting upon the suggestion in *Quivey* v. *Gambert*, 32 Cal. 304, overruled both motions for a new trial, on the ground that notice of motion was not given in time, holding that the notice should have been given within ten days after notice of filing the report of the referee.

The interesting question of practice presented is to be decided entirely by the provisions of the Practice Act, unless that Act is silent as to the mode of proceeding in this particular case. It is thoroughly settled in this State that the mode of reviewing the action of the Court upon an issue of fact is the same, whether the case is at law or in equity—there must be a motion for a new trial; and the only question upon this point is, whether the proceeding before the referee was a trial within the meaning of the one hundred and ninety-fifth section of the Practice Act. That section, as it stood when these proceedings were had, provided that notice of intention to move for a new trial should be given, when the action has been tried by a jury, within five days after verdict; when tried by the Court, a Commissioner, or referee, within ten days after the notice of the decision of the Judge, or of the filing of the report of the Commissioner or referee. A trial may be said to be an examination and determination of an issue of law or fact. An issue arises when a fact or conclusion of law is maintained by one party, and is controverted by the other in the pleadings. (Sec. 153, Practice Act.) A determination of an issue of fact is the verdict or decision, which is sought to be set aside when a new trial is asked under the code. There must have been a trial of an issue raised by the pleadings, or the provisions

of the Practice Act, in regard to new trials, do not apply
to the report of the referee. Evidently, therefore, if a col-
lateral matter not raised by the pleadings be sent to a
referee for the information of the Court, under the second
and third subdivisions of section one hundred and eighty-
three of the Practice Act, a motion for a new trial is not
necessary to bring the action of the referee before the Court
for review. In case, for instance, of an action by the vendor
to compel the specific performance of a contract for the sale
of land, all the issues might be tried before the Court; and,
in case the performance of the contract be adjudged, a
referee might be appointed to ascertain if the property had
been incumbered. The referee might be called to try a
contested question; but it would not be the trial of an issue,
and the decision of the referee would not be binding upon
the Court until adopted by it. It would not be such a
decision as would necessitate a motion for a new trial by
the aggrieved party, within ten days after notice of the
filing of the report. So of the numerous cases cited by the
counsel for appellant, where a collateral matter is sent to a
referee or Commissioner for trial. The finding of a referee
in such a case is not the finding of the facts, which takes
the place of a special verdict, as indicated in section one
hundred and eighty-seven of the code. That section dis-
tinctly provides for a different practice, where the issue is
upon the whole case, and where the referee reports the
facts. In the former case the report stands as the decision
of the Court; in the latter it has the effect of a special
verdict. The necessary inference is, that in other cases, not
mentioned in the section, the report has neither the effect
of the decision of the Court nor of a special verdict. The
provision in that section, that the decision of the referee
may be excepted to and revised in like manner as if made
by the Court, has reference to what immediately precedes

it, and is confined to those cases where the report stands as the decision of the Court.

The only difficulty in this case is in determining whether the matter referred was the trial of an issue made by the pleadings. It may be argued, with plausibility, that the taking of an account, and the ascertainment of a balance due, was within the issues made by the pleadings, and that, when the case had been partially tried by the Court, and the interlocutory decree entered, it was sent to the referee to complete the trial; that upon the filing of the referee's report all the issues of fact had been tried, and the findings of facts made, upon which a judgment could be entered. Under the ruling of *Crowther* v. *Rowlandson*, 27 Cal. 376, then was the time when proceedings for a new trial should have been commenced, dated from the notice of filing the report.

It is very true that an accounting was contemplated by the plaintiff, and is a portion of the relief sought by him. Still the issue raised by the pleadings upon this subject was his right to have an account taken, and the principles upon which the account should be taken, if at all, was not settled by the pleadings, but the accounting ordered may have been very different from that claimed. In this case the plaintiff might have claimed an account of the profits made by the company, while the accounts ordered may have been the dividends made. The referee, in taking the account and stating a balance, was not governed by the pleadings, but by the interlocutory decree. The question as to the correctness of his report was not, whether he had correctly tried the issue made by the parties, but whether he had correctly tried the question referred to him by the Court. His guidance was not the pleadings, but the order of reference. The issue had not been sent to him to try, but he examined a certain matter of fact under the instructions of the Court, and for the information of the Court before whom the trial

was being had. If his report furnished the information sought, the Court could act upon it; otherwise a new reference might have been made, and so on, until the desired information was had. I think, therefore, the proceedings before the referee in this case was not a trial within the meaning of the one hundred and ninety-fifth section of the Practice Act. The motion for a new trial, therefore, made upon the confirmation of the report, was in time. If the report of the referee required confirmation, there was no irregularity in interposing objections to its confirmation. No method is provided for bringing the facts before the Court upon the hearing of such objections, and in the absence of any legislation upon the subject, the Court can, by its rules, provide the mode of doing so. It is not necessary to pass upon this question, however, in this case, as all the questions necessary for the determination of this appeal arise upon the motion for a new trial and upon the appeal from the judgment.

The confirmation of the report and the order that judgment be entered for the plaintiff was not the rendition of the judgment within the meaning of the three hundred and thirty-sixth section of the Practice Act, and of the decision in *Gray* v. *Palmer*, 28 Cal. 416. Something more remained to be done than the mere clerical duty of entering judgment. The Court had not pronounced judgment upon the facts found, or determined the particular relief to which they entitled the plaintiff.

The final decree, taken in connection with the report of the referee, plainly shows that the relief granted is inconsistent with the pleadings and with the interlocutory decree. The referee committed a palpable error in crediting the plaintiff with the undivided profits of the company. The plaintiff only asks to be placed in the position he would have been in had the stock been issued to him as provided in the agreement between Chater, Bond, and Gordon. In

that case he would have received only one third of the divi- · dends, while his share of the undivided profits would be represented by his stock. So now, if he receives his share of the stock, he, by virtue of that stock, acquires his due interest in the undivided profits. The referee, however, has taken a profit and loss account of the transactions of the company, and credited the plaintiff with one third of the profits, irrespective of the question as to whether they have been divided, or are still retained by the company. The report shows that a small amount of profits only have been divided. Much the larger portion are still retained by the company, and is claimed to have been expended in improvements and in adding to the capital of the company. It is true the interlocutory decree speaks of "duplications, increase, profits, and dividends" made or accrued upon said one third of the stock. The words "duplication and increase" may have been intended to refer to the addition to the capital stock of the company, but still it refers to the duplications, increase, profits, and dividends of the one third of the stock, which should have been issued to Chater. There is a manifest difference between profits upon certain shares of stock and the profits of the company. If the language of the decree, however, were doubtful, the relief asked in the pleadings and the nature of the action should remove all question as to what was intended.

The alternative report of the referee is also manifestly erroneous. I cannot comprehend upon what principle it can be claimed that a dividend of stock can be charged as so much money, especially when the plaintiff recovers in this very action his share of the stock divided.

The final decree is reversed, the report of the referee is set aside, and the case remanded for further proceedings in accordance with this opinion.