42 180
89 369
89 635
42 180
100 72
42 180
105 306
42 180
106 538
42 180
112 384
42 180
113 19
42 180
f130 105

WILLIS JONES v. ANTHONY CLARK, ROBERT WINSPEAR, JOHN M. MINER, ROBERT O. CRAVENS, MARY J. CRAVENS, JAMES WILLIS LOW, EZRA S. BRADLEE, AND ASAHEL HUNTLEY, ADMINISTRATOR OF THE ESTATE OF WILLIAM RUFUS LONGLEY, DECEASED.

PROMISSORY NOTE OF MINING PARTNERSHIP SIGNED BY SUPERINTENDENT.
A promissory note, purporting to have been executed for and on behalf of a mining partnership, and signed by the Superintendent as such, is binding on the partnership, provided the Superintendent had authority to execute it, or it has been subsequently ratified by the company.

POWER OF SUPERINTENDENT TO BIND MINING PARTNERSHIP.—A managing Superintendent cannot bind a mining partnership, except upon such contracts as are usual and necessary in the ordinary prosecution of the work, unless specially authorized.

FINDINGS—FACTS STATED AS CONCLUSIONS still FACTS.—Where, on a question of ratification of a note, the findings embraced several facts tending to establish it, and then a conclusion from them that there had been a full ratification and confirmation; held, that such conclusion was the ultimate fact to be ascertained; but that it was none the less a finding of fact because stated as a conclusion.

DIFFERENCE BETWEEN MINING PARTNERSHIPS AND ORDINARY PARTNERSHIPS.—Mining partnerships, where there are no partnership articles, are governed by the law of ordinary partnerships, except so far as the general usage of persons engaged in similar pursuits or the established practice of the particular company has established a different rule—the only differences generally existing being such as flow from the fact that in such partnerships there is no delectus personæ.

LIABILITY OF MINING PARTNERS ON NOTE BY SUPERINTENDENT—ESTOPPEL.—Where a promissory note, purporting to be executed for and on behalf of a mining partnership, and signed by the Superintendent as such, was given in payment for property which the partnership was using, and such use was a beneficial one, and all the members knew soon after the execution of the note of its existence, and believed it to be a company note, and acquiesced in paying interest upon it until long after the original debt would have been barred if the note were held invalid; held, that the members of the partnership should be estopped from disputing its validity.

LIABILITY OF NEW MINING PARTNERSHIP ON OLD PARTNERSHIP DEBT.—If a promissory note is binding upon a mining partnership as a valid contract, such partnership continues liable, at least, to the extent of the partnership assets, though some members of the company may have parted

with their interests—the new members having purchased with knowledge, and subject to the payment of partnership debts.

ACTION FOR DISSOLUTION OF MINING PARTNERSHIP—FORMER PARTNER AS PARTY.—If, in the case of a mining partnership, a retiring partner still continues bound for a partnership debt, he, nevertheless, parts with his equity to have the partnership debts paid out of the partnership property; and in a suit to dissolve the partnership as among the partners, though he may be a proper, he is not a necessary party.

MINING PARTNERSHIP—DEATH OF PARTNER—NO CONTROL BY SURVIVOR.— A mining partnership is not dissolved by the death of a partner, nor has a surviving partner any right to take control of the property as survivor— this right only applying where the *delectus personœ* exists.

FINDINGS AS TO MERE PROBATIVE FACTS IMMATERIAL.—Where additional findings were asked for in the way of exceptions to findings, and such additions were either upon immaterial points or probative facts merely; *held*, that they were properly refused.

APPEAL from the District Court of the Fourteenth Judicial District, Placer County.

There was a judgment in this case in February, 1869, dismissing the action as to the defendants Robert O. Cravens, Mary J. Cravens, J. Willis Low, and Ezra S. Bradlee, dissolving the partnership known as the " Dardanelles Mining Company," existing between the plaintiff, defendant Clark, and the estate of William R. Longley, deceased, and ordering a reference to take an account as to the partnership affairs as between the said partners, and as to their transactions with the defendants Robert Winspear and John M. Miner.

In its findings upon which the foregoing judgment was based, the Court below, after reciting the facts, proceeded as follows:

" From the foregoing facts I find as matters of law: First, that said promissory note set forth in the complaint, dated August 1st, 1862, has been fully ratified and confirmed by said Dardanelles Company, and is to be held as the note of said company," etc.

The referee, J. I. Fitch, Esq., filed his report in August, 1869. He found, among other things, that J. Russell Glover, in December, 1867, acquired from the plaintiff one half share of his said two and one half shares, and that, at an election held in that month, Glover was put in the place of Clark for Superintendent. As to the injuries occasioned by the washing away of the bed-rock, the referee reported as follows:

"XVIII—The Dardanelles Company, in working their claim, did not clean up their bed-rock very closely, but saved the rock for future working. The rock contained gold in considerable quantities, in places to the depth of four or five feet, and was sufficiently soft to enable the workmen to 'pick it up.' The rock was of such a character that the gold could not be extracted by ordinary sluice washing. This rock was regarded by the company, and all others acquainted with it, as valuable, and had been saved by the company to be worked only when they had determined upon the proper mode, and were prepared with the means of working accordingly. Clark had, during several years, subjected this rock to various tests and experiments, to determine the proper mode of working it. The result of these experiments was the conviction that but a small part of the gold could be obtained by the usual sluice washing; that if it was to be worked by sluicing at all, that the tailings should be caught, allowed to lie and slake in the air for a considerable time, then sluiced again, and this operation to be repeated four or five times. In the experiments referred to quite satisfactory results were had, by first burning or heating the rock and afterwards washing it. The most satisfactory result, however, was obtained by crushing the rock before washing it. In the Summer of 1867 Clark was offered, by two parties, fifteen thousand dollars for this bed-rock, and desired to sell it; but plaintiff would not con-

sent. One of the parties, the Chinaman who bought the
tailings, offered eight thousand dollars cash, and the balance
in installments, and the other, ten thousand dollars cash, and
the balance to be paid afterwards. During the last Winter
Jones and Glover have picked up and sluiced down the
cañon about half of this bed-rock, and have not realized
from it more than enough to pay expenses. Clark forbid
Jones from working this rock. Jones and Glover knew of
the experiment made by Clark, and knew that it had long
been the opinion of the company that the gold could not
be extracted by the ordinary sluice washing. Jones, on the
trial, claimed that as much of the gold was saved in the
way he worked it as in any other; that the cañon was more·
than a mile long, and is owned by the company, is very
steep and rocky, and that the gold would be freed in its
passage down the cañon.

"XIX—On the 20th day of January, 1869, plaintiff, Jones,
and said Glover, made a contract with the Oro Company,
which owns mining claims adjoining the Dardanelles claims,
by which it was agreed that the Oro Company could wash
its dirt through a tunnel and flume of the Dardanelles Com-
pany, about seven hundred feet, until this flume united with
a flume through which the Dardanelles Company washed,
and that then the earth and water of the Dardanelles claims
should mingle with those of the Oro, and the two compa-
nies should divide the gold that came out after they min-
gled, in the proportion that the amount of gold taken out
of the Dardanelles above this point bore to the amount of
gold that came out of the Oro above this point. The con-
tract also allowed water which plaintiff was selling to the
Oro Company, from his own ditch, to be run into the reser-
voir of the Dardanelles Company, and mingle with the
water of the Dardanelles ditches, and run in the Darda-
nelles pipe from the reservoir down on to the claims, where,
from the lower end of the pipe, it was used in both the Oro

claims and the Dardanelles, along with the water that came through the Dardanelles ditches. Under this contract two thousand three hundred and seventy-nine dollars and thirty cents have come out of the joint tailings of the Oro and Dardanelles, which is in the hands of said Jones, and of which he charges himself with one thousand nine hundred and six dollars and ten cents, leaving a balance of four hundred and seventy-three dollars and twenty cents, which he claims he must pay to the Oro."

In reference to the reservoir, the referee found, "That during the Spring of 1869, plaintiff entered into a contract with one Story & Co., by which it was agreed that said Story & Co. should wash away the reservoir as a mining claim, and said plaintiff should furnish the water to do so out of his own ditch, called the "Miners' Ditch," and said Story & Co. should have half the gold, and plaintiff the other half; that said plaintiff has now received six hundred dollars under said contract, from Story & Co., and admits that there is considerable gold not cleaned up, which, he says, may amount to one thousand dollars; that one third of the reservoir and ground on which it stood is now washed away, and is destroyed as a reservoir, and Story & Co. are still washing away the remainder of it; that Clark, claiming to act as Superintendent, forbid Jones and Story & Co. from washing it away. The plaintiff has charged in his account of disbursements one thousand nine hundred and thirty-four dollars as cash paid to himself for water which he claims to have furnished to the Dardanelles claims from his own ditch, called the "Miners' Ditch," from the 27th of December, 1868, to the 3d of May, 1869. Clark, as Superintendent, forbid Jones from furnishing any water to the Dardanelles Company. I find, also, that Jones did not furnish but two thirds the amount of water for which he has charged."

Among his conclusions, the referee reported as follows:

"I find, as a fact, that the working of the bed-rock of the
Dardanelles claim, by Jones and Glover, described in para-
graph eighteen of this report, was done in a negligent and
careless manner, and that the company thereby sustained a
loss of seven thousand five hundred dollars; and, as a con-
clusion of law, that the work done by them was unlawful,
and wrongful, and negligent, and Jones should be charged
with the loss to the company, to wit: seven thousand five
hundred dollars. I find, as a fact, that the Dardanelles Com-
pany sustained a loss of one thousand dollars by the washing
away of the reservoir described in paragraph twenty of this
report; and that, as a conclusion of law, Jones should be
charged with that amount."

Upon the coming in of the report plaintiff filed exceptions
to it, and especially to the allowances against Jones, above
mentioned. To these exceptions defendant objected, on the
ground that the only mode of remedying defects or errors
(if any existed) in the report, was by motion for new trial.
The Court overruled defendants' objections and sustained
plaintiff's exceptions so far as they related to the items of
seven thousand five hundred dollars for loss by washing the
bed-rock, and one thousand dollars for loss by washing away
the reservoir. Final judgment was then entered in accord-
ance with the report of the referee, thus amended and in
favor of the plaintiff. Defendants moved for a new trial,
which having been denied, they appealed.

*Charles A. Tuttle,* for Appellants.

The note was not the note of the company on its face. It
was the promise of Longley alone. The words "Superin-
tendent of company" were mere *descriptio personæ.* (*Skill-
man* v. *Lachman,* 23 Cal. 199; *Jaques* v. *Margnand,* 6 Cow.
497; *Logan* v. *Bond,* 13 Georgia, 192; 8 Ala. 59.)

Although a mining and ditch company may be bound for supplies bought by its Superintendent to carry on work, yet it would not be bound to pay a note given for such supplies, when suit is brought on the note alone. (*McConnell* v. *Denver*, 35 Cal. 365.)

It is true the Court found that the note had been ratified by the company; but it was found not as a fact, but as a conclusion of law. The whole case is thus rested upon a ratification which is nowhere found as a fact. Ratification is an ultimate fact; and if it can be inferred, the acts from which it can be inferred are evidence, and have no place in findings of fact.

Again, Jones here seeks to enforce a lien on the company property for a note given him by the Superintendent four years before he had any interest in the company property. As to this note, he was an outside creditor. It constituted no part of the assets he paid into the firm, nor was it an advance made by him to the firm, or any of its members. He became a partner under the rule that a member of a mining partnership may bring in a new partner without the knowledge of the old partners; but when he came in a new partnership was created, and it was not liable for the old debts, unless it expressly made itself so. Here an outsider seeks to enforce a lien on the entire property as against the present partners, but one of whom was a member when the debt was created. A creditor has not the lien, but it is worked out through the partner who has it for his protection. (Story on Partnership, Sec. 358 et seq.) Here the partnership is solvent, and all those liable on the note at law are solvent. The partner who sold out to Jones lost the right to enforce a lien for the Jones note; and how could Jones, who bought the interest of such partner, acquire a lien?

As the action is for a dissolution and for an accounting back to 1863, all the old partners should have been brought

in. (Collyer on Partnership, Sec. 712 and notes; *Voorhies* v. *DeMeyer*, 3 Sand. 614; *Hallet* v. *Hallet*, 2 Paige, 14; *Bailey* v. *Judge*, 2 Paige, 278; 3 Barb. Ch. 630; *Elston* v. *Blanchard*, 2 Scan. 420; *Mallow* v. *Hinde*, 13 Wheat. 193.)

We were also entitled to have Glover made a party, as it appeared that he owned in the property. (*Harper* v. *Lamping*, 33 Cal. 649.) But, as a matter of fact, Glover was not properly elected Superintendent; because after the death of Longley, Clark was entitled to the possession and management of the property as surviving partner, and Longley's administrator had no right to vote for Glover as Superintendent. (*Allen* v. *Hill*, 16 Cal. 113; *Dougherty* v. *Creary*, 30 Cal. 290.)

It was error to strike out portions of the report of the referee, because such report stood as the finding and judgment of the Court. (Practice Act, Sec. 187; *Bryan* v. *Maume*, 28 Cal. 337; *Lyons* v. *Leimback*, 29 Cal. 129; *Gifford* v. *Carville*, 29 Cal. 589; *Henry* v. *Everts*, 30 Cal. 435; *Crappe* v. *Brizolara*, 19 Cal. 609; *Allen* v. *Hill*, 16 Cal. 113; *Mahoney* v. *Caperton*, 15 Cal. 314.)

*James F. Hubbard* and *Jo Hamilton*, for Respondent.

When Jones bought the interest of Mrs. Baker in the Dardanelles Company, he came in as a partner instead of Mrs. Baker, and the partnership continued its existence. (*Duryea* v. *Burt*, 28 Cal. 569.) As such partner he had a lien upon the partnership property for the debts due the creditors of the firm, which he might enforce in equity. (*Duryea* v. *Burt*, supra.) When Jones, who was a creditor, became a partner, he was not in any worse condition in regard to his own claim than in regard to the claim of a stranger. Mrs. Baker, when she sold out, lost her right to enforce a lien for the Jones' note; but Jones acquired that right, because he purchased it when he bought her note. (Story on Partnership, Sec. 262; *Taylor* v. *Field*, 4 Vesey, 396.)

The old partners, who were not beneficially interested in the accounting, were not necessary parties to the action, and the present defendants cannot object to the want of such parties. Nor was Glover a necessary party, as it does not appear when he bought.

There were sufficient grounds for a dissolution of the partnership; but whether so or not, it is plain that when a partnership has no fixed time for its duration, and is the ordinary mining partnership common in the mining region of California, having no agreement among its members as to its continuance, it may be dissolved at the will of either of the parties. (Collyer on Partnership, Sec. 109.)

As to liability on the note, it was sufficient to show a ratification by the members of the partnership; and all the circumstances show that they did ratify. The ratification once fairly made was final, and could not be recalled. (Story on Agency, Sec. 242.) The ratification was sufficiently stated in the findings. (*Swift* v. *Muygridge*, 8 Cal. 445; *Sears* v. *Dixon*, 33 Cal. 326.) The additional findings which were asked were not material, because the ultimate fact, to which they all looked, was found.

The doctrine that Clark had a right to the control of the property of the partnership as surviving partner, after Longley's death, is not applicable. It applies only in cases of commercial partnerships, not in such a one as this, where a new partner may be brought in without the knowledge or consent of the other partners. (Story on Partnership, Sec. 343; Collyer on Partnership, Sec. 9; *Fereday* v. *Wightwick*, 1 Russ. & Mylne, 49; *Duryea* v. *Burt*, 28 Cal. 569.)

The action of the Court below in setting aside portions of the report of the referee was correct, because there was no pretense of fraud in Jones' management of the bed-rock and reservoir; and the Court had a right to correct the errors of the referee, as it did, without adopting it. (*Calderwood* v. *Peyser*, 31 Cal. 337.)

By the Court, TEMPLE, J.:

On the 1st day of August, 1861, the Dardanelles Mining Company, a mining partnership, was in possession of, and was working, certain mining claims of the class known as hydraulic diggings, at Forrest Hill, Placer County.

At that time the company consisted of seven partners, one of whom, Longley, who owned nearly one half of the mine, to wit, six and one half fifteenths, was manager. On that day Longley, professing to act as the agent of the company, and for the purpose of supplying the company with water to work their claims, purchased certain ditches for the sum of fourteen thousand dollars. The plaintiff held mortgage liens upon the ditches amounting to eleven thousand dollars. By agreement between Longley, as agent of the partnership, and the owners of the ditches, the sum was to be paid to plaintiff. The plaintiff assented to the arrangement, and Longley, acting for the company, executed to him a note for that sum, due one year from date, with interest at two per cent per month. In consideration of this note plaintiff released his mortgages. It does not appear that any members of the company took part in the negotiations for the purchase of the property, or expressly agreed to the transaction, except Longley and one Clark, who at the time owned one and three fourths fifteenths in the company. Clark assisted in negotiating the trade, knew of the note given to plaintiff, and assented to it. The company took immediate possession of the property purchased, and have ever since continued to use the water of the ditches in working their claims. The members of the company must have known of the purchase at the time, and of the existence of the debt, and shortly after, as is proved and found, knew of the fact that the note had been given to plaintiff in part payment, and that the sum of three thousand dollars was paid on account of the purchase from

the partnership funds. There is evidence tending to show that most, of not all, the members of the company knew of the contemplated purchase before it was consummated; but there is no express finding upon this fact.

On the 19th day of August, 1862, Longley, still acting as Superintendent, took up the first note given, and gave a new note in lieu of it, in the words and figures following:

"$11,000. For value received, one year after date, for and on behalf of the Dardanelles Mining Company, I promise to pay to Willis Jones, or order, the sum of eleven thousand dollars, with interest at two per cent per month, payable semi-annually.

"William Rufus Longley,

"Superintendent of Company.

"Todd's Valley, August 1st, 1862."

It does not appear that Longley had express authority to execute this note from the company, or any of its members; but there is a finding that each of the members afterward knew of the fact, and assented to the giving of the note. On the 12th day of August, 1862, prior to giving the new note, Clark, at the request of Longley, paid the interest on the note out of the partnership funds.

Longley died in June, 1863. Clark then became Superintendent and manager of the mine, and as such paid upon the note from the partnership funds the following sums, upon the dates mentioned: July 28th, 1863, two thousand five hundred and forty dollars; February 1st, 1864, one thousand two hundred dollars; August 8th, 1864, two hundred dollars; August 27th, 1864, one thousand dollars; February 2d, 1865, one thousand two hundred dollars.

All these payments were known to the other members of the company, who made no objection. It does not appear that any member of the company has ever objected to the purchase, or complained that it was made without authority.

All the members of the company, also, acquiesced in the payment of the interest, and do not seem, even to the last, to have objected to these payments as made without authority; but objection was made that the note was so worded as not to bind the company, for in the answer they admit that Clark, as Superintendent, made the payments because he and the company, not having consulted counsel, supposed that the note was so worded as to bind the company.

The plaintiff, in October, 1866, became the owner of an interest in the company, and afterward commenced this action to obtain a dissolution of the copartnership, to have an account taken, and to have his note paid from the partnership assets. At the time the suit was brought Clark was the only member of the firm who was also a member at the time the purchase was made, or at the time the note was given. All who subsequently became owners by purchase knew at the time of the purchase of the existence of the debt to plaintiff, and of the note given to secure it.

The findings and judgment are in favor of the plaintiff; and defendants' motion for a new trial being denied, this appeal is taken from the order and from the judgment.

The note purports to be executed for and on behalf of the company, and is signed by Longley as Superintendent. The mode of executing it corresponds very nearly with some of the cases mentioned in section one hundred and fifty-four, Storey on Agency; and there can be no doubt that it is binding on the partnership, provided Longley had authority to execute it, or it has been subsequently ratified by the company.

The company being a mining partnership, managed by a Superintendent, it follows that the Superintendent could not bind the partnership, except upon such contracts as are usual and necessary in the ordinary prosecution of the work. He could purchase the supplies and materials necessary for

the usual working of the mine upon credit, but could not bind the concern by promissory notes or bills of exchange, unless specially authorized. Such authority might, of course, be conferred by the articles of association, or might be established by proof of general usage of similar companies in this country; but no such proof was adduced in this case. Longley, therefore, had no authority, as Superintendent, to purchase the ditch property, or to give the company's note in payment. There must have been special authority for that purpose, or his acts must have been afterwards ratified, or the partnership would not be bound.

The answer of Clark, Winspear, and Miner denies the partnership, but admits that the ditch property was purchased by the persons alleged to be members of it as tenants in common. It denies the authority of Longley to give the note for the company, but avers that he was furnished by some of the parties interested with all the money necessary to pay for the property. It is found that the company was a mining partnership, and the evidence fully sustains that finding. The defendants failed to prove the allegation as to the advance made to Longley to enable him to make the purchase. It may be considered, therefore, as settled beyond controversy, by the admissions and by the evidence, that Longley was authorized to make the purchase, and that there remained due, on account of the purchase from the company, eleven thousand dollars. Plaintiff has not attempted to prove any special authority in Longley to execute the note on behalf of the company, and the only question in regard to it is, whether it is shown to have been ratified. The Court finds several facts, which, in the opinion of the Court, tend to establish the fact of ratification, and then finds, as a conclusion from them, that the note has been fully ratified and confirmed by the company. This was the ultimate fact to be ascertained, and it is none the

less a finding of fact because it is stated as a conclusion from other stated facts.

But it is claimed that this finding is not justified by the evidence. It is true there is no evidence that the note was authorized by the company, at a company meeting, or that it was adopted in that manner after it had been executed by Longley. Nor is there any evidence either of the practice of this particular company, or of usage in similar companies, which would show the necessity of such action. Mining partnerships, where there are no partnership articles, are governed by the law of ordinary partnerships, except so far as the general usage of persons engaged in similar pursuits, or the established practice of the particular company has established a different rule. The only difference generally existing, as established by the decisions of this Court, are such as legitimately flow from the fact that in such partnerships there is no *delectus personæ*. (Bainbridge on Mines, 425.)

The partnership was bound for the money at the time the second note was given, even if the first were invalid. They were using the property, to purchase which the indebtedness was incurred, and the evidence shows that all agreed that the purchase was a beneficial one for the company. All knew, soon after the note was given, of its existence, and certainly then believed it to be a company note, for they aver in the answer that they supposed it was so worded as to bind the company. No one can be supposed so ignorant as to have thought it would bind the company, no matter how it was worded, if given without authority, and in a matter in which the company had no concern. All acquiesced in paying interest upon the note until long after the debt would be barred, if the note were held invalid. Under such circumstances, justice and fair dealing require that they should be estopped from disputing its validity.

The case differs widely, upon the question of ratification, from the cases of *Skillman* v. *Lachman*, 23 Cal. 198, and *McConnell* v. *Denver*, 35 Cal. 365. In the first case, it appears affirmatively that Lachman did not authorize the note, and had in no way recognized its validity. In the case of *McConnell* v. *Denver*, the note was given contrary to the terms of the contract, and had not been recognized as valid in any way. The proceeds of the ditch had been paid on account of the indebtedness, in accordance with the terms of the original contract of sale.

The note being established as a valid contract, binding upon the partnership as such, the partnership continued liable, at least to the extent of the partnership assets, although some members of the company had in the meantime parted with their interests in the concern. The new members purchased with full knowledge of the indebtedness and of the note, and of course took their interests subject to the payment of the partnership debts. (*Duryea* v. *Burt*, 28 Cal. 569.)

But it is contended that Hernsley, Cummings, and Baker, who were partners at the time the note was given, and who sold and transferred their shares before the commencement of this action, ought to have been made parties. If this were an action upon the note there would be some plausibility in this position. Ordinarily, when a partner retires from a firm he continues personally liable for the indebtedness, unless the new firm has assumed the debt and the creditor has taken them for it. If, in the case of a mining partnership, the retiring partner still continues bound, he, nevertheless, has parted with his equity to have the partnership debts paid out of the partnership property. The purchaser, however, having taken his interest subject to the debts, has no claim to recover against his vendor for any debts which may be paid out of the partnership assets. The former partners, therefore, have no interest except con-

sequentially, in this proceeding, and, if proper, are certainly not necessary parties to it.

At the time the note was given, it appears that a mortgage was executed by Longley upon the property of the company to secure it. This mortgage, like the note, was executed for and on behalf of the company, and purported to be an incumbrance upon the property of the partnership, and not upon Longley's interest in it. This being a proceeding by one of the partners to obtain a dissolution of the partnership, and to have the partnership assets applied to the payment of the firm debts, and there being no other creditors, it is not material to inquire whether this instrument is valid or not. The plaintiff does not appear here primarily as a creditor, but as a partner seeking a dissolution of the company and a settlement of its affairs. If he is entitled to a dissolution, the other relief must follow. There appears to have been no agreement that the partnership should continue for a fixed term, nor was any custom shown which could affect the question of duration. If it were otherwise, however, sufficient cause for a dissolution was shown. As the partnership was not dissolved by the death of Longley, Clark had no right, as survivor, to take control of the property. This rule can only apply where the *delectus personæ* exists, and the partnership is dissolved by the death of a partner.

The character of the interest which Glover had acquired in the partnership, if any, is not shown. Had it been, it may be that it would have appeared to the Court that he was not a necessary party. He may have had no transfer of any interest, but only a promise, from Jones. At all events, he is not shown to have been a necessary party.

The exceptions to the findings were properly overruled. The additional findings asked for were either immaterial or are the probative facts merely.

It was not necessary, upon a reference, such as was had in

this case, to move for a new trial, in order to have the report modified by changing some of the findings of the referee. (*Harris* v. *San Francisco Sugar Refinery*, 41 Cal. 393.)

The facts found by the referee in regard to the injury by washing away the bed-rock by the plaintiff show that the damage was altogether hypothetical. There is no evidence of bad faith in the matter. Upon this state of facts the allowance was properly stricken out.

The allowance of one thousand dollars, for washing away the reservoir, seems correct. It was virtually disposing of the property of the company, and Jones should be made to account for the value of it to the company. The allowance of one thousand dollars by the referee seems reasonable, and if it were too much, this would not authorize the Court to reject the demand altogether. The decree should be modified in this particular, by charging the plaintiff with this sum of one thousand dollars, as found by the referee.

Ordered that the case be remanded, with directions to modify the decree in accordance with this opinion.